**EVANS v. KAVANAGH, Collector of Internal Revenue (two cases).**

Nos. 4983, 5526.

United States District Court
E. D. Michigan, S. D.

Oct. 19, 1949.

536

J. Thomas Smith and Smith & Huffaker, all of Detroit, Mich., for plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and John W. Fisher, Sp. Assts. to Atty. Gen., and Edward T. Kane, U. S. Atty., and Roger P. O'Connor, Asst. U. S. Atty., both of Detroit, Mich., for defendant.

LEVIN, District Judge.

These consolidated actions are brought for the refund of alleged overpayments of taxes. There is no controversy as to the amounts. The issues presented are:

I. Whether profits received by the taxpayer in each of the years 1938, 1939, 1940 and 1941 under contracts made in 1936 and 1937 for the disposition of certain patents and patent rights are capital gains or ordinary income.

II. Whether the taxpayer is entitled to a bad debt deduction for 1940 under Section 23(k) of the Internal Revenue Code, 26 U. S.C.A. § 23(k), as contended by the taxpayer; or whether the deduction was properly denied by the Commissioner on the ground either that the alleged bad debt was an allowable deduction before 1940, or was not allowable at all because no sufficient effort had been made to collect.

III. Whether the recovery of any of the tax paid for 1940, attributable to the sale of the assets under the contracts, is barred because no timely claim for refund was filed upon the ground asserted in the complaint.

I.

Evans, since his graduation in 1907 from the Engineering School of the University of Illinois, has been employed on the engineering and production staffs of several companies. Until 1919 he worked as either production or design engineer of motors, automobiles, tractors and trucks. On none of these did he retain any patents. From 1919 until 1934 he worked in the capacities of production and planning engineer and as chief engineer for a motor car manufacturer and a company manufacturing motor equipment. During those periods his employment contracts stipulated that his employers were to have full rights to any improvements or inventions developed by him, and such applications for patents as were made by him were at the expense and for the benefit of his employers. From 1934 to 1937 he was employed as mechanical engineer on production methods and as a consulting engineer for one concern and then for his present employer.

Two transactions are involved: (1) A sale to the Motor Wheel Corporation in 1936, and (2) a sale to Kelsey-Hayes Wheel Company in 1937. Each transaction involved a single basic idea or invention, which was developed by him several years before the sales and outside of his regular employment hours.

In 1935, the plaintiff and Motor Wheel were engaged in a dispute arising out of the latter's refusal to pay him royalties in the amount allegedly owing under its contract for the use of plaintiff's invention on a brake drum. The invention was covered by a patent application which was then the subject of an interference proceeding in the Patent Office. Plaintiff was sustained before the Examiner but an appeal was taken by the opposing party, and Motor Wheel refused to make any further payments pending the outcome of the appeal and found fault otherwise with the contract for royalties.

At this time the plaintiff required a serious surgical operation. His wife was also ill, and since he feared that he might not recover from the operation and desired to avoid the possibility of imposing on his family the burden of the litigation, he entered into an agreement on January 9, 1936, with Motor Wheel for the sale of his invention and patent rights. It was agreed

that in exchange for the brake drum patent rights, Motor Wheel would pay the plaintiff $10,000 upon execution of an assignment of his interest in the patent application on brake drums and in all inventions thereafter developed by him, dominated by the inventions covered by the patent application, and would in addition pay to him $2,500. every three months beginning March 25, 1936, and extending to, and including December 25, 1940. Plaintiff was also to be paid ¼ cent for each brake drum sold by Motor Wheel in excess of four million in each of the years 1936 to 1940, inclusive.

Plaintiff was paid the specified sums aggregating $50,000 as provided for in the contract, but did not receive any moneys for sales in excess of four million brake drums annually.

On a petition for rehearing, the defendant stated that since the contract does not disclose what portion of the sum of $50,000 was allocated to the sale and what portion thereof, if any, for past due royalties, the taxpayer's case must necessarily fall for failure of proof. Durkee v. Commissioner of Internal Revenue, 6 Cir., 162 F.2d 184, 173 A.L.R. 553. The court is satisfied that the said aggregate payments of $50,000 did not include any monies for royalties owing for the use of the invention by Motor Wheel prior to the date of the execution of the contract for the sale of the invention. These past due royalties amounting to $10,000 were received by plaintiff in 1936 and reported by him as regular income.

For sometime the plaintiff carried on negotiations with Kelsey-Hayes for a licensing agreement under his patent covering a four-wheel brake, to the end that such agreement might contain terms for the payment of royalties, similar to the terms of the original Motor Wheel agreement. It appears that Kelsey-Hayes was unable to enter into the licensing agreement as proposed because its principal customer for the four-wheel brake was opposed to the payment of royalties by its suppliers. It was only after Kelsey-Hayes broke off negotiations for the licensing agreement that the plaintiff assigned his patents and patent rights to the four-wheel brake to Kelsey-Hayes. He was to receive

$50,000 upon the execution of the contract containing the assignments which was dated January 1, 1937, and like amounts on January 1, 1938, and 1939, and $75,000 on January 1, 1940. For reasons which do not appear but which, in any event, would be irrelevant to the issues here, the plaintiff received in each year amounts less than those called for by the contract.

In the contract containing the assignments, the plaintiff reserved to himself the use of the invention in connection with a projected development by him of a short brake pedal, and the right to assign such privilege to one other person. This contract was amended in writing on December 1, 1939, and in this amendment the word "nonexclusive" was used in connection with the word license. The defendant in the petition for rehearing, urged that the reservation and the use of the word "nonexclusive" in the amendment indicate that there was in fact no absolute assignment as alleged by the plaintiff.

A transfer of patent rights is nonetheless an effective assignment because it is coupled with a license back to the assignor under the circumstances we have here. 2 Walker on Patents, Deller's Ed., 1401 and 1402, citing numerous cases. The court is satisfied from all the pertinent documents between the parties and other evidence, that the plaintiff conveyed to Kelsey-Hayes the three-fold exclusive right to make, use and vend the devices covered by the invention, and that there was an effective divesting by the plaintiff of the patent and rights he assigned to Kelsey-Hayes, with the exception of the limited use by him of the invention for the purpose mentioned. The language of Judge Hicks contained in Kenyon v. Automatic Instrument Co., 6 Cir., 160 F.2d 878, 882 is precisely applicable to the case at bar: "The Waterman case further points out, that whether the transfer of an interest or right under a patent is an assignment or a license, does not depend upon the name by which it is called, but upon the legal effect of its provisions. No particular form is required for an assignment but the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent."

538

The case referred to is Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923.

The plaintiff was not engaged in the trade or business of selling patents. The two sales, Motor Wheel and Kelsey-Hayes, were the only sales by the taxpayer of his inventions except for a number of patents and patent applications which involved mere modifications or refinements of the basic four-wheel brake patent, assigned in performance of the Kelsey-Hayes agreement. The assignment by the plaintiff of a patent in 1932 for an ignition lock, for which he received the cost of the patent application and patent fees, was made under such circumstances as carry no significance in relation to any issue here.

In the years 1936 and 1937, when the sales were made, the definition of capital assets was set out in Section 117(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 874, as follows:

"For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

The Revenue Act of 1938 added the following words to Section 117(b) of the Revenue Act of 1936, "or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in Section 23(l)." 26 U.S.C.A. § 117(a) (1).

■ The defendant charges that in reporting his income for 1938 and 1939, the plaintiff deducted certain expenses which under Section 23(l) of the Internal Revenue Code, 26 U.S.C.A. § 23(l), are allowable as depreciation, and that therefore the plaintiff must be assumed to have been engaged in the trade or business of an inventor during the year in which the sales of the patent and the patent application were made. Whether the amounts deducted were depreciation in this sense, or whether the explanation of the petitioner is right that this was his method of giving effect to the cost of the assets sold and the proration of his expenses, as authorized by Section 44 of the Internal Revenue Code, 26 U.S.C.A. § 44, relating to installment sales, is not a question which requires consideration. This limitation on property termed "capital assets" is not applicable in this case because by Section 1 of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Acts, page 1001, the Act applies only to taxable years beginning after December 31, 1937. The character of the transactions were frozen when made and nothing that the petitioner did under subsequently enacted law not expressly made retroactive could change the character of the asset once established; moreover, the asset being in fact of a capital nature, the claim unwarranted in law for an allowance for depreciation could not convert the patent and patent application into "property, used in the trade or business."

■ The court is satisfied that the plaintiff has surmounted the presumption that the Commissioner's assessment is correct. He has amply sustained the burden of proof that he did not engage in the trade or business of an inventor; his activities over the years were not of such continuity or regularity as to imply the carrying on of a trade or business, and the sales of the patent and patent rights with which we are here concerned were casual and brought about by unusual and non-recurring events. The properties sold were capital assets, and since they had been held the length of time required by the statute, the profits received on the contracts are taxable as long-term gains from the sale of capital assets. The case of Harvey et al. v. Commissioner of Internal Revenue, 9 Cir., 171 F.2d 952 is distinguishable on the facts.

II.

On the question of the deductibility of the sum of $3,404.38 as a bad debt for the year 1940, the facts are as follows: In the latter part of 1937, the plaintiff lent the sum claimed to be deductible from gross income, to Byron E. McCready of Detroit, to enable McCready to continue his real es-

tate business. This indebtedness was evidenced by a promissory note dated March 21, 1939, payable in ninety days. The note was never paid. The defendant asserts that the debt was worthless when default was made in 1939. But McCready had a valuable asset as late as 1940. It was constituted of his right to meet the highest bid at a scavenger sale of certain lands he had previously owned, in accordance with Comp.Laws Supp.1940, § 3723-7, Section 7.957, Mich.Stat.Ann., Meltzer v. State Land Office Board, 301 Mich. 541, 546, 3 N.W.2d 875. McCready failed to exercise his right and it lapsed. The debt was not worthless in 1939, but became worthless in 1940 when it became hopelessly uncollectible.

█ The petitioner has amply sustained the burden of showing that the debt became worthless and hence a lawful deduction from gross income in the year 1940.

### III.

In addition to challenging the right of the plaintiff to treat, as capital gains, the profits received from the sale of patents and patent rights, the defendant asserts that no claim for a refund of any excess payment of income tax on such profits can now be entertained. In support of this position, he invokes Section 322(b) (1) of the Internal Revenue Code, 26 U.S.C.A. § 322(b) (1). By this provision a taxpayer is required, prior to the commencement of proceedings to recover taxes illegally or er-

roneously collected, to file with the Commissioner a claim for refund within three years from the time the return was filed or within two years from the time the taxes were paid. The filing of such claim with the Commissioner is made a condition precedent to the enforceability of such claim by proceedings. The defense is advanced that these actions cannot be sustained upon the ground that no adequate and proper claim for a refund was filed with the Commissioner as provided by law.

The taxes for 1940 were paid on October 23, 1942. The payment was accompanied by a letter dated the same day, addressed to the Collector of Internal Revenue (exhibit 17). This letter followed two letters; one of September 30, 1942, addressed to the Technical Staff, Internal Revenue Department, Detroit, Michigan (exhibit 14), and one from the taxpayer dated October 3, 1942, addressed to the Treasury Department, 1270 National Bank Building, Detroit, Michigan (exhibit 16). The formal claim for refund was filed on June 18, 1945. The question, then, is whether the three letters which are set out in full in the footnote may properly be considered as an informal claim for refund of taxes, capable of amendment and perfection by the filing of the formal refund claim.[1]

█ The law requires that a claim for refund be filed by the taxpayer before the right of action becomes enforceable by formal proceedings, and requires that a period of six months must elapse after the

---

[1] Exhibit No. 14

September 30, 1942.

Technical Staff
  Internal Revenue Department
  Detroit, Michigan.
    Attention: Ed Webber, Esq.
    Re: Mr. Edwin R. Evans.
Gentlemen:

We have had several conferences with you in regard to the proposed deficiency for the taxable year ending December 31, 1940, for the above taxpayer, in which we have been unable to agree, and you have asked that we have taxpayer sign form 870 waiving restrictions on assessment and collection of deficiency, so that the assessment can be made immediately without necessity of sending out a 90-day letter.

I have talked with taxpayer, and he has agreed to accede to your request and has executed form 870, copies of which are enclosed herewith, solely for the purpose of eliminating the necessity of your sending out a 90-day letter. He does not agree to the tax and does not agree that he owes you the $7,488.61, as provided therein, or any other sum, and it is his intention that he will, immediately upon the assessment of said deficiency, pay said tax and file claim for refund, and if denied, he will institute appropriate action either in the District Court or the Court of Claims to obtain a refund of said assessment, as taxpayer feels that said assessment is unjustified, unwarranted, and illegal, and this form 870 is filed as accommodation with you to eliminate

claim is filed before the right of action may be enforced. The purpose of the claim and the reason for suspending the right of enforcement are to enable the Treasury to consider for itself without the intervention of a court whether the claim is just and should be paid. In determining the sufficiency of a claim, it should be examined to determine if it is of such a character and fortified by detail adequate to apprise the Commissioner of the basis of the claim. Without these qualifications he is disabled from considering whether the claim should be paid voluntarily or whether the taxpayer should be compelled to submit his claim to a tribunal for judicial decision. The court finds that plaintiff's exhibit 17, taken together with the other notices, plaintiff's exhibits 14 and 16, all of which were received in due course of the mails by the offices to which they were addressed, contained sufficient information to identify the basis for refund upon which the taxpayer relied, and to afford the Commissioner an opportunity to formulate his judgment. Compare: Night Hawk Leasing Co. v. United States, 18 F.Supp. 938, 941, 84 Ct.Cl. 596; United States v. Kales, 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132; Neilson v. Harrison, Collector of Internal Revenue, 7 Cir., 131 F.2d 205.

A judgment for plaintiff will be entered.

---

the 90-day letter, and is not to be construed as waiving any rights taxpayer may have in obtaining a refund.

Very truly yours,
/s/ J. Thomas Smith
JTS:em

Exhibit No. 16
Orchard Lake, Michigan
October 3, 1942.
Treasury Dept.
1270 Natl Bk. Bldg.
Detroit, Mich.
Gentlemen:
C–TS: CenD    JFG:CDL
Your letter is rather confusing and I wish to confirm my understanding in regard to the paper I signed to the effect that such signature does in no way jeopardize my rights to recover by suitable court action any money I pay in settlement of your present demands.

All of this seems unfair to me, especially in view of the fact that I depended on the primary examiners for tax advice and in this instance later actions of the department proves that the advice I received was wrong and really it was the cause of this present controversy.

It seems especially unfair in view of the weight of the decisions on both sides. It may be that you are bound, through instructions, to give added weight to BTA decisions, when necessary to carry a point even over court decisions, but it would seem that settlements should be effected by a fair consideration of all. You gentlemen know best whether or not you are able to take the action you would expect if you were in my place, knowing the facts as you do.

Yours very truly,
/s/ E. R. Evans
Exhibit No. 17
October 23, 1942
Collector of Internal Revenue
Federal Building
Detroit, Michigan.
Gentlemen:
In behalf of Edwin R. Evans, 2832 East Grand Blvd., Detroit, Michigan, I am enclosing herewith his check payable to your order in the sum of $8201.26 together with your notice and demand for income tax dated October 16, 1942.

Notice is hereby given that payment of this tax is made under protest as the assessment of the tax is based upon a disallowance of certain claims of the taxpayer that a portion of his income received during the year 1940 resulted in capital gains and that he was entitled to certain deductions for bad debts.

These claims were disallowed by your office in accordance with the letter of the Internal Revenue Agent in charge, addressed to Mr. Evans under date of February 6, 1942.

We intend to file a claim for refund of this tax and to pursue our remedy in court if such claim for refund is denied.

Yours truly,
/s/ John Hal Engel
JHE mc