Clarence E. **BEACH**, Individually and as Executor of the Last Will and Testament of Bessie S. Beach, Deceased, Plaintiff,

v.

Frank J. **SHAUGHNESSY**, Individually and as Collector of Internal Revenue for the Twenty-First District of New York, Defendant (two cases).

Nos. 3635, 4276.

United States District Court,
N. D. New York.
Oct. 16, 1954.

Ralph L. Emmons, Binghamton, N. Y., for plaintiff. Harry Bangilsdorf, Binghamton, N. Y., of counsel.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, and Clarence J. Nickman, Special Assts. to the Atty. Gen., for defendant.

BRENNAN, Chief Judge.

The plaintiff seeks judgments refunding income taxes alleged to have been erroneously assessed and collected for the years 1943 (Action No. 3635) and 1945, 1946 & 1947 (Action No. 4276). The actions were tried together and separate causes of action are alleged for each year; they all involve a single contention and will be referred to collectively in this decision.

Plaintiff and his wife (now deceased) filed joint income tax returns for the calendar years of 1943, 1945, and 1946 showing an item of monies received from or on account of a contract between plaintiff and the Gamewell Company dated March 6, 1925, as a taxable item. A similar return was filed by plaintiff alone for the year 1947 showing a similar item. The tax for each of the above years was computed and paid, considering the item as ordinary income. Thereafter claims for refund were made for each of said years, the claims being based upon the contention that the items of income reported were in fact and law gains from the sale of capital assets held for more than six months and

therefore only taxable at 50% of the items as reported. 26 U.S.C.A. § 117.

The preliminary procedural steps are not challenged here. The actions were started, issue joined, evidence received, briefs filed and the controversy is before the Court for decision. The question presented is narrow and arises out of the contentions of the opposing parties.

Plaintiff contends, as above indicated, that the items referred to exist because of the sale of capital assets. Defendant contends that the items may not be considered as arising from the sale of capital assets since the property sold was held by the taxpayer primarily for sale to customers in the ordinary course of the taxpayers trade or business. Section 117 of the Internal Revenue Code, 26 U.S.C.A. § 117, is particularly pertinent and is to be applied to the facts which must be determined in each particular case. Higgins v. Commissioner of Internal Revenue, 312 U.S. 212 at page 217, 61 S.Ct. 475, 85 L.Ed. 783.

Plaintiff may be termed a consulting engineer and patent solicitor. It is evident that he possessed an aptitude for mechanics and his whole life's work evolves around the exercise and development of his mechanical skill. He entered the electrical contracting business with his father as a young man. The business was conducted in plaintiff's name and later under the assumed name of the Star Electric Company. In 1896, the business was incorporated under the same name and continued until 1910, when it was adjudged a bankrupt. During the time mentioned above the plaintiff was in charge of the business and received a weekly salary. His father was not actively employed or engaged in the business. During this period the plaintiff worked upon the development of inventions, submitted applications and obtained some patents all of which were assigned to the partnership or its successor, the corporation. Its stock was owned by the plaintiff and his father. Generally speaking the inventions and applications applied to signaling systems for hotels and fire and police signaling or alarm systems. They served as the principal basis for the business, and plaintiff received no compensation therefor other than his weekly wage. The corporate stock earned no dividends.

After the bankruptcy in 1910, a nephew of plaintiff's father took over the assets and liabilities of the business, including notes upon which plaintiff and his father were obligated, formed a new corporation under the name Star Electric Company, and continued the business. The nephew was the owner of the stock of the new corporation, and plaintiff was employed as general manager and chief engineer. He continued his work developing inventions and improvements as a part of his employment and at the corporation's expense. Same were used in the business, but were assigned to the owner of the business individually. No consideration other than his salary moved to the plaintiff on account thereof.

In 1915, the assets of the Star Electric Company, including the patents and applications, were assigned and sold to the Gamewell Company. Plaintiff received no financial benefit on account of such sale.

From 1915 to 1925 plaintiff engaged in general practice as a consulting engineer and patent solicitor. He continued to develop improvements in police and fire alarm systems and licensed some patents to the Aero Company, but made no sales during that period.

In 1925 plaintiff entered into a contract with the Gamewell Company under the terms of which he sold to Gamewell some thirteen patents and applications. Since there is no dispute but that the contract amounted to a sale of the items mentioned above, no lengthy discussion of the contract is necessary. Briefly it provides for a cash consideration payable by Gamewell and a percentage of the gross yearly sales over a fixed amount It requires the assignment by the plaintiff of future inventions to Gamewell, and contains a contract of employment of plaintiff at an annual salary. The

salary item is not involved here, and is entirely separate from provisions relating to the assignments and the consideration therefor. There are other protective, limiting and clarifying provisions contained in the contract which are not essential to the decision here. The items of income in dispute here arise out of the annual payments made by Gamewell to the plaintiff for the years above referred to in accordance with the terms of the contract covering a percentage of the annual gross sales.

Of the thirteen patents or applications above referred to, one relating to the mechanism of municipal fire alarm boxes was basic or dominant, the others were supplemental and were important only in that they were improvements thereof. About twenty additional applications or patents were also assigned by the plaintiff to Gamewell. They were developed by the plaintiff during the life of the contract, and were assigned according to its terms. They were also supplemental to the basic idea as above mentioned.

One additional fact should be mentioned although it is not particularly disputed. The dominant invention assigned by plaintiff to Gamewell was made and held by plaintiff more than six months prior to the assignment.

In approaching a decision here the Court has in mind that the decision of the Commissioner denying the refund is presumptively correct and that the burden is upon the plaintiff to establish error therein. Niles Bement Pond Company v. U. S., 281 U.S. 357 at page 361, 50 S.Ct. 251, 74 L.Ed. 901.

Plaintiff's burden requires that he establish, (a) that the taxable item represents proceeds from the sale of a patent or patents, (b) that such patent or patents had been held by him for more than six months and (c) that he did not hold such patent or patents " * * * 'primarily for sale to customers in the ordinary course of his trade or business.' " Briggs v. Hofferbert, D. C., 85 F.Supp. 941, 942. Plaintiff has without doubt borne his burden as to (a) and (b) and there remains only to determine whether or not the negative requirement imposed by (c) has been established. Has the plaintiff established that he was not in the business of selling or offering for sale patents or inventions? This is another way of posing the single question here.

Judicial precedents afford no all inclusive rule by which a decision may be reached. Each case depends upon its own facts having in mind the peculiar nature of patent property, Crown Die & Tool Co. v. Nye Tool & Machine Works. 261 U.S. 24 at page 40, 43 S.Ct. 254, 67 L.Ed. 516, and the taxpayer's business activities. It is evident that the frequency of comparable sales, the number and variety of inventions, the number of customers, the nature and extent of the efforts or offers to sell this or similar property, the consideration received and details of the taxpayers employment and business ventures, are each important in determining the ultimate question.

From the beginning of plaintiff's working life until the bankruptcy in 1910, he was engaged in a losing effort to establish a business which would provide a living for himself and some measure of return to his father. His inventive skill was so dedicated and any patents or inventions were used to bolster that effort. No sales were made of patents; none were offered for sale. From 1910 to 1915 he was employed by a third party as manager of the successor business and again all inventions made were for use in the business as far as plaintiff was concerned. He received his salary and turned over without consideration his work product. Again there were no sales or offers to sell. From 1915 to 1925 he was a free lance consulting engineer attempting to solve the technical problems of his clients. During that period, he voluntarily gave one patent to the Aero Company, no separate consideration was received therefor. It was during this period that the basic patent which was sold

to Gamewell and is the source of the disputed income, was developed, together with the improvement relating thereto. The inventions made after 1925 are not important here since they were already sold under the terms of the Gamewell contract. The testimony adds up to the conclusion that prior to the sale in question, the plaintiff was a manager of a family business, a salaried employee and a consulting engineer whose inventions were for the benefit of his then employer and were incidental to the service he was rendering. Pike v. U. S., D.C., 101 F.Supp. 100–102.

That a man may be engaged in several business ventures at the same time is obvious, but it is equally obvious that the word "business" as used in the statute contemplates some measure of continuity of effort to promote the interests of the business asserted to exist. Whether we use "common understanding and experience" Helvering v. Horst, 311 U.S. 112 at page 118, 61 S.Ct. 144, at page 147, 85 L.Ed. 75, or the "common sense interpretation" referred to in Rhodes v. Commissioner of Internal Revenue, 6 Cir., 100 F.2d 966 at page 969, the evidence here shows that this plaintiff was not in the business of selling inventions.

Many administrative and tax court decisions are cited by the plaintiff which are urged as precedents here. Many of them are cited or discussed in Pike v. U. S., supra; Kronner v. U. S., Ct.Cl., 110 F.Supp. 730; Evans v. Kavanagh, D.C., 86 F.Supp. 535 and Briggs v. Hofferbert, supra, and no further reference to them is necessary. The one case urged by the defendant as a precedent, Avery v. Commissioner, 47 B.T.A. 538, is distinguishable on the facts. It is sufficient to say that the weight of authority and the trend of decisions is to require that a single non-recurrent sale of a patent does not establish a trade or business under the provisions of the statute which controls the present litigation. Compare Section 1235, Revenue Code of 1954, 26 U.S.C.A.

From the facts found as above it is concluded that this Court has jurisdiction herein and that the plaintiff is entitled to judgment as demanded in the complaints, same to be agreed upon and entered by the parties; otherwise to be settled on five days notice.