Hetfield & Hetfield, by George F. Hetfield and Harold Druse, Plainfield, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., Newark, N. J., Louis F. Oberdorfer, Asst. U. S. Atty. Gen., by Leonard M. Goldberg, Dept. of Justice, Washington, D. C., for defendant.

**Clark G. PERKINS and Leslie M. Perkins, his wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 134-61.**

United States District Court
D. New Jersey.

April 25, 1963.

AUGELLI, District Judge.

This case was tried to the Court, sitting without a jury. The sole issue involved is whether money received by Elkin Chemical Co., Inc. ("Elkin") from a sale of patents to Texas Butadiene & Chemical Corporation ("TBC") should be taxed as ordinary income or as a gain from the sale of capital assets held for more than 6 months.

The Court, having considered the evidence, the briefs filed on behalf of the parties, and the arguments of counsel, hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This is a suit for refund of income taxes in the amount of $7,180.53, together with interest from April 15, 1960. On that date, plaintiffs filed their joint income tax return and paid an assessed tax of $13,093.19 for the calendar year 1959. On July 27, 1960, plaintiffs filed an amended tax return for the year 1959 and a claim for refund of $7,180.53 for that year.

2. Elkin is a New Jersey corporation, organized on June 16, 1954. Its principal place of business is in Miami, Florida. On May 5, 1959, Elkin filed an

election under section 1372 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1372, not to be subject to the corporation income tax. Thus, Elkin's income is taxed to its shareholders individually pursuant to the provisions of sections 1373 to 1375 of the Code.

3. Plaintiff Leslie M. Perkins owns 24 shares of common stock of Elkin and with her husband, the other plaintiff, Clark G. Perkins, filed the joint income tax return in question for the year 1959. In addition, the following individuals hold common stock in Elkin: Dr. Irving E. Muskat, 26 shares; Mrs. Dorothy G. Muskat, 26 shares; and Mrs. G. Richard Czerwinski, 24 shares. Dr. Irving E. Muskat and Dorothy G. Muskat are husband and wife. Plaintiff Mrs. Perkins and Mrs. G. Richard Czerwinski are their daughters.

4. Plaintiffs reported $31,087.50 as ordinary income on their original income tax return for 1959, which sum was received by Mrs. Perkins from Elkin during the year 1959. On their amended return, they claimed that $28,743.50 of said sum of $31,087.50, representing Mrs. Perkins' share of the proceeds of a sale of patents by Elkin to TBC in 1959, should have been reported as capital gain and not as ordinary income.

5. Dr. Irving E. Muskat has been the principal officer and employee of Elkin from the time of its formation to date. Dr. Muskat's primary field of professional interest is chemical research. He holds a Ph.D. degree in chemistry from the University of Chicago, and was a member of its faculty until 1934. In 1935, he entered industry as a Director of Refining Research for Gulf Oil Company, and from 1936 to 1942 he was Director of Chemical Research for Pittsburgh Plate Glass Company.

6. In 1943, Dr. Muskat organized Marco Chemicals, Inc. ("Marco") under the laws of the State of New Jersey and became the owner of 60% of its outstanding stock. Continental Can Company and its subsidiary, Vulcan Detinning Company, owned the re-

maining 40% of the stock. Marco was organized to carry out Government contracts, to do research in polyester resins, and to manufacture products from such resins. From 1943 to 1953, Dr. Muskat was the president of Marco and also a director of the research program at Vulcan Detinning Company.

7. In 1952, Marco purchased from Continental Can Company and Vulcan Detinning Company their 40% interest in Marco stock. In 1953, Dr. Muskat sold his stock interest in Marco to Celanese Corporation of America ("Celanese") under an agreement by which he became a full-time employee of Celanese for one year. In 1954, Dr. Muskat organized Elkin to take over and assume his personal obligations under the Celanese agreement, and Elkin entered into an agreement with Celanese to carry on a research and development program in the field of polyester resins at a fee of $6,000.00 a month. Dr. Muskat moved from New Jersey to Florida in 1954, and the Elkin laboratory facilities were established in Miami.

8. During the course of its contract with Celanese, Elkin, through Dr. Muskat, developed a new type of non-polyester resin in the field of styrene-maleic anhydride polymers, hereinafter referred to as the "Elkin resins". Pursuant to its agreement with Celanese, Elkin offered this development to Celanese in 1956, but that company was not interested in acquiring it. On December 31, 1956, the contract between Elkin and Celanese was terminated.

9. On February 4, 1957, Dr. Muskat filed patent applications numbered 637890 and 637855 with the United States Patent Office; and on January 23, 1958, he filed patent application number 710624. These patent applications covered the Elkin resins, and were assigned by Dr. Muskat to Elkin.

10. During 1957 and 1958, Elkin continued its research in and development of the Elkin resins, and set up a pilot plant to manufacture said resins. Elkin also communicated with a number of com-

panies in various fields for the purpose of having the Elkin resins evaluated to determine their commercial uses.

11. By 1959, commercial uses for the Elkin resins had not been developed to an extent sufficient to interest potential purchasers of the product. Elkin was faced with the problem of raising funds to finance the construction of a larger manufacturing plant and for further research and evaluation. At that point of time, Elkin determined to sell the patents.

12. In January 1959, Dr. Muskat, who was in New York City to read a paper on the Elkin resins before the Society of Plastics Engineers, met with one John Fennebresque, whom he had known as a vice-president of Celanese. Mr. Fennebresque, who was then the president of TBC, expressed an interest in purchasing the Elkin resins. The negotiations which followed culminated in a sale, on May 1, 1959, of the patents on the Elkin resins to TBC for $250,000.00, plus a 3 per cent royalty. By a separate contract entered into that same date, Elkin also agreed to act as a consulting and research laboratory for TBC in its further development and manufacture of the Elkin resins for a fee of $6,000.00 a month for two years. The latter agreement was terminated by Elkin in May, 1961, and Elkin has been inactive since that time. Dr. Muskat then became Vice-President for Research at the University of Miami.

13. The sale of patents to TBC in 1959 was the only such sale by Elkin during its operating history. Dr. Muskat has never sold a patent, although in the period since 1935 he has assigned, without additional compensation, a number of patents developed by him to employers for whom he worked. Nor did Marco ever sell a patent during the period in which Dr. Muskat was a stockholder.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action for refund of income taxes under 28 U.S.C.A. § 1346(a) (1).

2. Section 1222(3) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1222 (3), defines "long term capital gain" as gain from the sale of a capital asset held for more than six months.

3. Section 1231(a) of the Code, 26 U.S.C.A. § 1231(a), provides that gain on a sale of "property used in the trade or business" of the taxpayer shall be considered gain from the sale of a capital asset.

4. Section 1231(b) (1) (B) of the Code, 26 U.S.C.A. § 1231(b) (1) (B), defines "property used in the trade or business" as being property used in trade or business, "of a character which is subject to the allowance for depreciation * * *, held for more than 6 months * * *, which is not * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

5. The patents sold by Elkin to TBC were property held for more than 6 months by Elkin and subject to the depreciation allowance. Such property was not held by Elkin primarily for sale to customers in the ordinary course of its trade or business. There is no evidence of continuity of sales or sales related activity over a period of time by Elkin with regard to its patents. See Lockhart v. Commissioner of Internal Revenue, 258 F.2d 343 (3 Cir.1958); Dunlap v. Oldham Lumber Co., 178 F.2d 781 (5 Cir.1950); Beach v. Shaughnessy, 126 F.Supp. 771 (N.D.N.Y.1954); Lamar v. Granger, 99 F.Supp. 17 (W.D.Pa.1951).

6. The patents were therefore "property used in the trade or business" of Elkin, and the gain to plaintiffs from the sale of such property by Elkin in 1959 was a long term capital gain under section 1231(a) of the Code, 26 U.S.C.A. § 1231(a).

Judgment will be entered for plaintiffs for $7,180.53, together with interest thereon from April 15, 1960.

Submit order.