**William M. REESE and Catholeen Reese, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 78–1441.

United States Court of Appeals, Fifth Circuit.

April 8, 1980.

228

Milam L. R. Wade, Dallas, Tex., William T. Steen, New Orleans, La., for petitioners-appellants.

M. Carr Ferguson, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Gilbert E. Andrews, Acting Chief, Lester Stein, Acting Chief Counsel, William S. Estabrook, David I. Pincus, Attys., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before WISDOM, GOLDBERG and HENDERSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Taxpayers William M. Reese and Catholeen Reese appeal from a decision of the United States Tax Court, T.C.M. ¶ 76,275 (P–H 1976), which held, in part, that losses sustained by taxpayers upon the disposition of two properties were capital losses, rather than ordinary losses as claimed by taxpayers. The sole issue raised on appeal is whether the Tax Court erred in holding that the losses were capital. We conclude that the Tax Court correctly characterized the losses and therefore affirm.

## I. BACKGROUND

The Commissioner of Internal Revenue determined deficiencies in taxpayers' joint federal income tax returns for the years 1967 and 1968. Taxpayers petitioned the Tax Court for a redetermination of the deficiencies and, while the case was pending before the Tax Court, they amended their petition, seeking to carry net operating losses sustained in 1969 and 1970 back to the tax years in dispute. The Commissioner then audited taxpayers' returns for the years 1969 and 1970 and determined a deficiency for 1969.

The Tax Court held, *inter alia*, that two of the losses taxpayers sought to carry back

from 1969 and 1970 were capital, and from that decision taxpayers appeal. We address each loss separately.

## II. THE ADDISON, TEXAS PROJECT

Taxpayers seek an ordinary loss deduction under § 165 of the Internal Revenue Code [1] on a loss incurred by them upon the disposition of a partially completed building in Addison, Texas. They claim that the loss is deductible either under § 165(c)(1) as a loss incurred in a trade or business, or under § 165(c)(2) as a loss resulting from a transaction entered into for profit. The Tax Court held that the loss was deductible under § 165(c)(2) as a loss incurred in a transaction entered into for profit, but also held that the loss resulted from the sale of a capital asset and therefore was limited by the capital loss provisions of §§ 165(f) and 1211 of the Code.

Taxpayers claim the Tax Court erred in holding that the property was a capital asset. They contend the property falls within one of the exceptions to the definition of capital asset set forth in § 1221. [2] Additionally, they contend that the loss cannot be a capital loss because the disposition of the property was not a "sale or exchange" as required by § 165(f) and § 1222(4). [3]

### A.

From 1967 to 1970, William Reese was president, treasurer, chairman of the board and a principal stockholder of the Industrial Instrument Corporation (IIC). In 1968, Reese arranged for the construction of a new plant for IIC to be built on a tract of land owned by him in Addison, Texas. Reese planned to sell the building, upon completion, to investors who would agree to lease it back to IIC.

Reese financed the construction of the plant himself. Most of the funds expended on the plant were from Reese's own bank account, but some funds were paid from the account of Marcan Corporation, which Reese described as a shell corporation owned by him. Funds paid from the account of Marcan were contributed by Reese. Reese's total investment in the new plant was more than $162,000, including a $26,000 basis in the land on which it was constructed.

Although the Tax Court found that Reese did no more than finance the project, Reese testified at trial that he personally acted as the general contractor of the project. Reese stated that he decided to undertake the general contracting work himself because he believed that he could perform the work more cheaply than could an outside contractor and that he could thereby provide IIC with a more economical lease-purchase arrangement.

The plant was never completed. In 1969, a creditor in an unrelated transaction obtained a judgment on a note against both

---

1. I.R.C. § 165 provides in relevant part:

    (a) *General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

    .  .  .  .  .

    (c) *Limitation on losses of individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—
        (1) losses incurred in a trade or business;
        (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business;

    .  .  .  .  .

    (f) *Capital losses.*—Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.

2. I.R.C. § 1221 provides in pertinent part:
    [T]he term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—
        (1)  .  .  .  property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;
        (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

3. I.R.C. § 1222(4) provides:
    *Long-term capital loss.*—The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 6 months, if and to the extent that such loss is taken into account in computing taxable income.

IIC as primary obligor and Reese as guarantor. IIC had gone into bankruptcy in the latter part of 1969, and thus the creditor proceeded against Reese. In 1970, the partially completed building and the land were sold for $25,000 at a sheriff's sale in execution of the judgment against Reese.

In the Tax Court, taxpayers unsuccessfully argued that $137,000 [4] of the $162,000 investment in the land and building was deductible as an ordinary loss.

### B.

■ We affirm the Tax Court's determination that the loss sustained upon disposition of the Addison project was a capital loss. Section 1221 defines as "capital asset" all property held by the taxpayer, and the Addison property falls within neither of the two possibly relevant exceptions to that definition.

■ First, the Addison project does not fall within the exception provided by § 1221(1) for property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. The Tax Court found, and taxpayers do not contest, that Reese was primarily engaged in the business of a corporate executive. A taxpayer, of course, may engage in more than one trade or business. *See Snyder v. Commissioner*, 295 U.S. 134, 55 S.Ct. 737, 79 L.Ed. 1237 (1935); *Ackerman v. United States*, 335 F.2d 521 (5th Cir. 1964). Hence, our inquiry focuses on whether the Tax Court correctly held that Reese's activities in connection with the Addison project did not rise to the level of a trade or business.

■■ The Tax Court found that Reese financed the project. Mere investment in a single project, however, does not constitute a trade or business. *See, e. g., Thomas v. Commissioner*, 254 F.2d 233 (5th Cir. 1958). Reese claims, however, that in addition to financing the project, he acted as its "builder, developer and general contractor." Taxpayers thus contend that the Tax Court clearly erred [5] in finding that Reese did "no more" than finance the project.

We decline to review the Tax Court's finding, for assuming *arguendo* that Reese was the builder, developer and general contractor of the Addison project, we conclude that Reese was not engaged in a trade or business with respect to the project.

This court has often emphasized that the lack of continuity and frequency of activity in a particular field of endeavor is a strong indicia that a taxpayer is not engaged in a trade or business in that field. *See, e. g., Thomas v. Commissioner*, 254 F.2d 233, 237 (5th Cir. 1958); *Dunlap v. Oldham Lumber Co.*, 178 F.2d 781, 784 (5th Cir. 1950); *Fahs v. Crawford*, 161 F.2d 315, 317 (5th Cir. 1947). Prior to the Addison project, Reese admittedly had never been engaged as a general contractor, builder or developer, nor has he been so engaged since. Nevertheless, taxpayers strenuously urge that the extent of Reese's involvement in this single project is sufficient to constitute a trade or business.

■ We reject taxpayers' contention. While there may perhaps be extraordinary circumstances in which a taxpayer's devotion of time and resources to a non-recurring venture constitutes a trade or business,[6] a single transaction ordinarily will not constitute a trade or business when the taxpayer enters into the transaction with

---

4. Taxpayers conceded that the $25,000 applied to reduce Reese's liability as guarantor of the IIC note was deductible only as a non-business bad debt pursuant to § 166 of the Internal Revenue Code.

5. In determining whether property is primarily held for sale in the ordinary course of a taxpayer's trade or business, we apply the clearly erroneous rule to the Tax Court's resolution of subordinate facts but treat the ultimate conclusion to be drawn from these facts as a question of law. *See, e. g., Biedenharn Realty Co. v.*

*United States*, 526 F.2d 409, 416 n.25 (5th Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976).

6. Conceivably, a single endeavor could rise to the level of a trade or business where the taxpayer, at the time he entered into it, fully expected the transaction to be but the first of many and was prevented, for one reason or another, from continuing in the business. Such a situation, however, does not exist here.

no expectation of continuing in the field of endeavor. *See Commissioner v. Williams*, 256 F.2d 152 (1958), *aff'd on rehearing*, 285 F.2d 582 (5th Cir. 1961); *Beach v. Shaughnessy*, 126 F.Supp. 771 (N.D.N.Y.1954); *Herwig v. United States*, 105 F.Supp. 384, 122 Ct.Cl. 493 (Ct.Cl.1952). Thus, we have held that a taxpayer who purchased a partially constructed ship, completed the construction and then sold the ship was not engaged in the trade or business of buying, constructing and selling ships because there was no evidence indicating that any other such projects had been contemplated. *Williams, supra* at 155. Similarly, here there is no evidence indicating Reese entered into the Addison project with the idea that it would be the first of other such projects by him. To the contrary, Reese himself admits that he developed this single piece of property for the specific purpose of providing IIC with a new manufacturing facility and that he decided to undertake the project himself only after discovering that he could perform the work more cheaply than could an outside contractor.

■ The project was clearly an isolated, non-recurring venture. Reese cannot be considered to be engaged in the trade or business of "building, developing and general contracting" with respect to the venture because there was neither prior or subsequent activity on his part in this field of endeavor, nor an intention to devote his time and effort in the future to activities in this field. Accordingly, we affirm the Tax Court's determination that, with respect to the Addison project, Reese was not engaged in a trade or business within the meaning of section 1221(1).[7]

■ Apart from § 1221(1), § 1221(2) excludes from capital asset treatment "real property used in [a taxpayer's] trade or business." The Addison plant, however, was to be used in IIC's manufacturing business, not in Reese's business of a corporate executive. Since taxpayers point to no circumstances which would require us to impute the business of IIC to Reese, *see, e. g., Whipple v. Commissioner*, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963); *Burnet v. Clark*, 287 U.S. 410, 53 S.Ct. 19, 77 L.Ed. 511 (1932), § 1221(2) has no applicability to the Addison property.

■ Finally, taxpayers contend that the Addison project cannot be accorded capital loss treatment because there was no "sale or exchange." *See* I.R.C. § 1222(4). Taxpayers claim that the disposition of the Addison property at the sheriff's sale in execution of a judgment against Reese was not a sale or exchange. We find no merit in this contention. It is well settled that a sale need not be accomplished by voluntary action of the taxpayer to be a "sale or exchange." *See Helvering v. Hammel*, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303 (1941).[8]

In summary, the Addison property qualifies for neither of the two possibly relevant exemptions from capital asset treatment, and the disposition of the property constituted a sale or exchange. We therefore conclude that the Tax Court correctly held that the loss sustained upon disposition of the property was a capital loss.

### III. THE AUSTIN, TEXAS PROPERTY

Taxpayers also claim that the Tax Court erred in holding that a loss sustained by them on the sale of certain property located

---

7. By affirming the Tax Court's determination that Reese was not engaged in a trade or business under § 1221(1), we affirm by implication the Tax Court's determination that the loss on the Addison project was not a "loss incurred in a trade or business" under § 165(c)(1), but was a "loss incurred in any transaction entered into for profit, though not connected with a trade or business" under § 165(c)(2). Indeed, it is difficult to imagine what type of transaction would fall within § 165(c)(2) were we to adopt taxpayers' position that a single, non-recurring venture entered into without any expectation of

continuing in the field of endeavor constitutes a trade or business.

8. The fact that the sheriff's sale was in execution of a judgment against Reese as guarantor of a note unrelated to the Addison property is of no significance. While it is true that *Hammel* involved a loss sustained by a mortgagor on the foreclosure of mortgaged property, in both *Hammel* and the case before us, the taxpayer transferred property to his creditor in satisfaction of a claim against the debtor.

in Austin, Texas was a capital loss. Taxpayers contend that the parties stipulated that the loss was an ordinary loss and that the Tax Court erred by failing to give effect to the stipulation. Alternatively, taxpayers argue that even if the stipulation did not establish the character of the loss, they are entitled to an ordinary loss deduction because the Commissioner did not give them adequate pre-trial notice that he was contesting the character of the loss.

## A.

On Schedule D, Part III (entitled "Property Other than Capital Assets") of their 1969 income tax return, taxpayers claimed a loss of $27,600 on the sale of property located in Austin, Texas. In his deficiency notice for 1969, the Commissioner stated that he intended to disallow the loss deduction "because it has not been established that any deductible loss was sustained."

At trial, the parties entered into a stipulation concerning the property. Immediately prior to the stipulation, taxpayers' attorney was questioning taxpayers' son about the cost of the Austin property. Taxpayers' attorney stated to the court that if they were given a few minutes, he believed that he and the attorney for the Commissioner "would be willing to stipulate what these lots cost . . . ." The court then granted a recess in order to allow the attorneys time to agree to a stipulation.

When court resumed, the attorney for the Commissioner directed the court's attention to Schedule D, Part III of taxpayers' 1969 tax return where taxpayers had claimed the loss of $27,600 on the sale of the Austin property. The attorney for the Commissioner then announced that "[t]he parties stipulate that the correct loss on that property was $16,457.37." Both sides then confirmed that that was the stipulation. There was no further discussion at trial of the loss on the Austin property.

The Tax Court held the loss on the Austin property was a capital loss because there was "little or no evidence" to contradict the Commissioner's position that the property was a capital asset. Asserting that the court had misconstrued the stipulation, taxpayers filed a motion for reconsideration of the court's opinion. The Tax Court denied the motion without opinion.

## B.

■ We reject taxpayers' contention that the Tax Court erred in interpreting the stipulation to cover only the fact and amount of the loss and not whether the loss was ordinary or capital. Although the stipulation is not a model of clarity, the context in which it was made more than adequately supports the construction given it by the Tax Court. The discussion prior to the recess during which the stipulation was agreed upon concerned only the cost of the property. Moreover, taxpayers' attorney himself stated that he sought a stipulation only as to what the lots cost. When viewed in this context, the fact that prior to announcing the stipulation, the attorney for the Commissioner directed the court's attention to the portion of taxpayers' return where they had claimed the loss as a noncapital loss simply does not adequately support a conclusion that the parties stipulated as to the character of the loss.

■ We also reject taxpayers' second contention. Taxpayers argue that they were not given adequate pre-trial notice that the Commissioner was contesting the character, as well as the fact and amount, of the loss on the Austin property. Hence, they contend that when the parties stipulated as to the fact and amount of the loss, taxpayers satisfied their burden of proving that they were entitled to an ordinary deduction.

It is true that the deficiency notice simply stated that the loss was not allowable "because it has not been established that any deductible loss was sustained." In addition, the record does not indicate that the Commissioner ever explicitly informed taxpayers before trial that he was relying in part on the capital character of the loss in sustaining the deficiency determination.

■ Although the information the Commissioner provided taxpayers may fall somewhat short of the spirit of good plead-

ing, the deficiency notice adequately informed taxpayers that every aspect of the deductibility of the loss was in issue. While a different result may possibly obtain when the Commissioner pinpoints the reason for his determination, *see Helvering v. Wood*, 309 U.S. 344, 349, 60 S.Ct. 551, 553, 84 L.Ed. 796 (1940), when the determination is made in general and indefinite terms, the taxpayer is reasonably placed on notice that the basic elements of a claimed deduction, including its fact, amount and character, are in dispute. *See Sorin v. Commissioner*, 29 T.C. 959, 969 (1958), *aff'd*, 271 F.2d 741 (2d Cir. 1959). The burden then shifts to the taxpayer to prove all aspects of the loss and overcome the presumptive correctness of the Commissioner's determination. *See, e. g., C. A. White Trucking Co. v. Commissioner*, 601 F.2d 867, 869 (5th Cir. 1979); *Brimberry v. Commissioner*, 588 F.2d 975, 977 (5th Cir. 1979). Since taxpayers failed to present any evidence as to the character of the loss incurred on the sale of the Austin property, the Tax Court properly sustained the Commissioner's determination that the loss was capital.

## IV. CONCLUSION

For the above reasons, the decision of the Tax Court is AFFIRMED.