GEORGE F. SMITH, JR., PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26787–82.     Filed May 20, 1985.

---

*James R. Murphy* and *John C. Smuck*, for the petitioner.
*Kristine A. Roth* and *Marlene Gross*, for the respondent.

OPINION

TANNENWALD, *Judge*: Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes:

| Taxable year | Deficiency | Addition to tax sec. 6653(a)[1] |
|---|---|---|
| 1976 | $57,573.70 | $2,878.69 |
| 1977 | 95.897.50 | 4,794.88 |
| 1978 | 373,930.89 | 18,696.54 |

The issues for decision are (1) whether petitioner may deduct as interest his payments made during 1978 with respect to a promissory note, and (2) whether petitioner must recognize gain on a series of transactions during 1978 culminating in the transfer of a partnership interest in exchange for stock in a controlled corporation.[2]

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.

[2]The parties have stipulated that petitioner's deficiencies for 1976 and 1977 are $29,241.46 and $23,041.30, respectively; that petitioner's additions to tax under sec. 6653(a) for 1976 and 1977 are $1,462.07 and $1,152.07, respectively; and that petitioner's taxable income for 1978 is increased from $9,267 to $69,516, subject to adjustment for a net operating loss carryback from 1981 of $40,198.58 and to disposition of the two issues in the instant case. The parties further agreed that the addition to tax under sec. 6653(a) for 1978 will apply to the deficiency ultimately determined for 1978, without reference to any carryback.

The case was submitted fully stipulated under Rule 122. This reference incorporates the stipulation of facts and attached exhibits herein. At the time the petition was filed in this case, petitioner, a citizen of the United States, maintained his residence in Nassau, Bahamas. Petitioner timely filed Federal income tax returns for 1976, 1977, and 1978.

On July 7, 1971, petitioner and William R. Bernard (Bernard) entered into a partnership agreement establishing the Eleven Twenty Eight Sixteenth Co. (the partnership) for the purpose of purchasing and leasing the land and building located at 1128 16th Street, N.W., Washington, D.C. (the DC real property). In relevant part, the agreement provided as follows:

1. The partnership will be a general partnership and formed and operated under the laws of the District of Columbia.

> \*    \*    \*    \*    \*    \*    \*

4. The profits and losses of the partnership shall be divided between the partners in accordance with the agreement of the partners.

> \*    \*    \*    \*    \*    \*    \*

7. No obligations shall be incurred except with consent of both the partners.

On July 28, 1971, the partnership entered into a Contract of Sale and Indemnity Agreement (the purchase agreement) with the John H. Wilkins Co. (Wilkins) for the purchase of the DC real property. The purchase agreement provided, in relevant part, as follows:

2. The purchase price of land shall be One Hundred Thousand Dollars ($100,000.00) and the purchase price of the building thereon and the various fixtures thereto shall be Two Hundred Thousand Dollars ($200,000.00) * * * payable as follows:

One Hundred Dollars ($100.00), by check subject to collection, receipt of which is hereby acknowledged.

Two Hundred Ninety-nine Thousand Nine Hundred Dollars ($299,900.00) payable by the Purchaser, executing, acknowledging, and delivering to the Seller a negotiable promissory note satisfactory to the Seller and secured by a Deed of Trust on the properties herein sold and purchased, such note payable in one lump sum on the tenth (10th) yearly anniversary of settlement of this agreement together with any interest remaining unpaid and accrued thereon. * * * Said note shall bear interest at the rate of six and one-half percent (6½%) annually payable on the outstanding balance,

interest to be paid quarterly on the last day of each calendar quarter for the quarter or portion thereof then expiring except that no interest shall accrue or be payable for the first ninety (90) days subsequent to the date of closing. Said note shall be secured solely by the premises purchased. There shall be no personal obligation upon the Purchaser for the principal of or interest upon said note beyond the value of said premises, except as hereinafter provided, and Purchaser shall not be liable for any deficiency as to either principal or interest on said note beyond the value of said premises, in the event of foreclosure, default in interest payment, default in principal payment, or similar event other than for interest accrued to date of default or to date of disavowal of its obligation by the Purchaser plus such liquidation damages as hereinafter provided.

3. The Seller agrees that up to a maximum sum of One Hundred Twenty-five Thousand Dollars ($125,000.00), which the Purchaser may borrow from time to time from other sources, the lien of the Seller's purchase money mortgage created in Paragraph 2 hereto and the obligation of the note secured thereby shall be subordinated from time to time to funds which the Purchaser may borrow from time to time from other sources over a period of not more than three years from the date of closing from any source and apply to repairs, such as painting, plastering and otherwise, capital improvements, or expend on fixtures including but not limited to carpeting, draperies, blinds and lighting fixtures which shall attach to the property and form a part thereof.

The loan of such funds may be secured by a first Deed of Trust lien upon the premises to which the Seller's purchase money Deed of Trust shall be subordinated. The Purchaser agrees that upon default of any first trust outstanding against the premises, they shall inform the Seller of such default by written notice within ten (10) days.

4. The Purchaser agrees that upon default of either the senior indebtedness permitted under Paragraph 3 or the purchase money mortgage herein created the Purchaser will pay the Seller as liquidation damages the sum of:

(a) In the event that at the time of default there is any first trust outstanding against this property then; the larger of:

(1) Fifty Thousand Dollars ($50,000.00), or

(2) Fifty percent (50%) of the then outstanding balance of the senior indebtedness on said property permitted under Paragraph 3, and

(b) Six (6) months interest on the then outstanding balance of the purchase money mortgage created herein, and

(c) Provided the lease between the parties on the adjoining premises is outstanding at that time, the sum of Four Thousand Five Hundred Dollars ($4,500.00) representing six (6) months rent on the adjoining premises known as the "parking lot" and subject to a lease-option-agreement between the parties to this contract or their assigns.

The promissory note referred to in the purchase agreement (the Wilkins note) was secured by a deed of trust on the DC real property dated August 23, 1971.

From the time of the purchase by the partnership until the end of April 1978, the partnership conducted the business of rental of the DC real property, and Bernard, Joanne Crothers Bernard (Crothers), and several persons and entities related to petitioner contributed property (the Smith Co. assets) to the partnership in exchange for partnership interests. During this period, petitioner was a member of a law firm that occupied portions of the building located on the DC real property. For substantial portions of this period, Bernard and Crothers, husband and wife, were members of this law firm. By December 31, 1977, the senior obligation referred to in the purchase agreement appeared on the partnership's books as a note in favor of the NS & T Bank in the amount of $87,500, and the Wilkins note appeared in the amount of $299,900. Another partnership debt to NS & T Bank, in the amount of $5,995, also appeared on the partnership's books at this time.

In early 1978, pursuant to agreements reached by petitioner, Bernard, and Crothers in partial settlement of litigation arising out of disagreements between Bernard and Crothers, on the one hand, and petitioner, on the other hand, with respect to the conduct of the business of the law firm and the partnership, the Smith Co. assets were withdrawn in kind from the partnership, and steps were taken toward the incorporation of the partnership. After such withdrawal, petitioner's capital account stood at ($178,485.83), and that of Bernard and Crothers totaled ($1,711.78).

The partnership incurred an operating loss for the period January 1, 1978, through May 17, 1978, of $10,865, which petitioner claimed as a loss in 1978, and which loss respondent allowed. During the same period, petitioner made capital contributions to the partnership of $8,000.

On March 28, 1978, the parties to the litigation executed an agreement to settle the litigation whereby petitioner was to purchase the partnership interests of Bernard and Crothers for cash in the aggregate sum of $197,000, to be divided equally between Bernard and Crothers, in exchange for releases and a termination of the litigation. The payment was to be made "within ten (10) days of March 28, 1978, not to exceed thirty days thereafter."

On April 25, 1978, James R. Murphy became a partner in the partnership with an investment of $50,000. Thereafter on

the same day, petitioner paid Crothers and Bernard each $98,500, and Crothers and Bernard transferred their partnership interests to petitioner and executed and delivered a quitclaim deed to the DC real property in favor of petitioner.

On May 2, 1978, the partnership and Wilkins agreed that the amount to which the Wilkins note would be subordinated would be increased from $125,000, as provided in the purchase agreement, to $185,000. On the same date, the partnership executed a note, secured by a deed of trust on the DC real property, in favor of NS & T Bank in the principal amount of $185,000, payable in monthly $1,788 installments commencing June 2, with the unpaid principal balance and any accrued interest payable in 10 years. Petitioner personally guarantied this note.

On May 3, 1978, petitioner entered into a contract of sale with his mother, Minnie P. Smith, whereby Mrs. Smith agreed to purchase from petitioner the interests transferred to petitioner by Bernard and Crothers. Also on that date, petitioner entered into a contract of sale with a testamentary trust of his late father whereby the trust agreed to purchase from petitioner a 25-percent capital interest in the partnership.[3]

On May 11, 1978, petitioner executed and contributed to the partnership a document entitled "Assumption of Liability," which provided, in relevant part:

WHEREAS, George F. Smith, Jr., a general partner of the Eleven Twenty Eight Sixteenth Company, is willing to personally assume the obligation to pay the $299,900.00 due to the John H. Wilkins Company;

NOW THEREFORE, in consideration of $1.00 paid in hand and other good and valuable consideration receipt of which is mutually acknowledged, the undersigned hereby agree that from this date forward George F. Smith, Jr., promises to pay the $299,900.00 second mortgage created by the aforesaid agreement of July 28, 1971 along with all interest chargeable to that portion of the second mortgage as said interest comes due.

Petitioner signed the agreement on his own behalf and for the partnership. On the same date, petitioner withdrew from the partnership $95,515, representing substantially the net proceeds of the $185,000 note to NS & T Bank after satisfaction of the unpaid balance of the original $125,000 senior obligation.

---

[3]Although the record does not so reveal, the parties have based their positions herein on the assumption that the contracts of sale were closed, and we will do the same.

At the time of the execution of the Assumption of Liability, the $185,000 senior indebtedness was outstanding, as was the parking lot lease referred to in the purchase agreement. Thus, the "liquidation damages" under the purchase agreement at the time of such execution would amount to $106,746.75, representing 50 percent of the outstanding senior debt ($92,500), plus 6 months interest on the Wilkins note balance ($9,746.75), plus 6 months rent on the parking lot lease ($4,500).

Following the execution of the Assumption of Liability, the financial position of the partnership stood as follows:

| Assets | | Liabilities and capital | |
|---|---|---|---|
| Land and building | $797,000 | First trust | $185,000 |
| Cash and miscellaneous | 12,100 | Miscellaneous | 12,100 |
| | | Net worth | 612,000 |
| | 809,100 | | 809,100 |

The DC real property remained subject to the $299,900 Wilkins note, for which the partnership held petitioner's agreement to pay. In estimating the $797,000 fair market value of the DC real property, the partnership relied on a March 1978 offer by an unrelated party for a 10-year lease on the property, with an option to purchase after 3 or 10 years for the inflation-adjusted equivalent of $825,000.

On May 17, 1978, the four partners contributed their partnership interests to the Eleven Twenty Eight Sixteenth Corp. (the corporation), which was formed on March 26, 1978, in exchange for $100 par value common stock having a fair market value of $1,000 per share. The stock was issued in the following amounts and proportions:

| Partner | Shares | Percent |
|---|---|---|
| Petitioner | 204 | 33% |
| Minnie P. Smith | 208 | 34 |
| Trust | 150 | 25 |
| Murphy | 50 | 8 |

The corporation simultaneously assumed the $185,000 first trust indebtedness to NS & T Bank. The corporation made the 1978 interest payments on the $299,900 Wilkins second trust note, but, with respect to payments after May 17, the payments were charged on the corporate books to reduce the

balance due petitioner from the corporation on prior advances. In this way, petitioner made payments in respect of the Wilkins note on June 30 and October 1 of $4,913.43 each, and such payments were considered by Wilkins to be interest. Thereafter, until the note was paid, petitioner made all payments of the interest on the Wilkins note personally.

Basic to our resolution of the issues herein is a determination as to the validity of the assumption agreement between petitioner and the partnership. Neither party disputes the proposition that this determination rests upon State law—in this case the law of the District of Columbia. *Walther v. Commissioner*, 316 F.2d 708 (7th Cir. 1963), revg. a Memorandum Opinion of this Court (only *on the application* of the governing State law); *Arrigoni v. Commissioner*, 73 T.C. 792 (1980); *Abdalla v. Commissioner*, 69 T.C. 697, 707 (1978), affd. 647 F.2d 487 (5th Cir. 1981).

The record herein is lacking in precise information as to the circumstances surrounding petitioner's assumption of the obligation of the partnership to Wilkins. The stipulation of facts, which provides the only evidence of record, merely states: "On May 11, 1978, petitioner on his own behalf and on behalf [of] the partnership executed and contributed to the partnership a document entitled Assumption of Liability. A copy of said document is incorporated as Exhibit 20-T." That exhibit merely sets forth the "assumption" by petitioner. On brief, petitioner asserts that "under his assumption agreement, petitioner acquired an additional investment interest in the partnership for which he received shares in the corporation." In his reply brief, respondent accepts this characterization and indicates that it is the basis of respondent's claim herein that the payments under the assumption agreement were contributions to the partnership and/or the corporation. In view of the foregoing, we will assume that there was sufficient consideration to support petitioner's assumption of the partnership's obligation to Wilkins. Clearly, the assumption, in turn, supplied sufficient consideration for petitioner's increased partnership interest. We recognize that because the partnership was a nonrecourse obligor, there may be a question under District of Columbia law as to the nature of petitioner's obligation, i.e., whether he had any obligation to Wilkins as a third-party beneficiary. Compare *Yasuna v.*

*Miller*, 399 A.2d 68 (D.C. 1979), with *DeLeon v. Rhines*, 74 F.2d 477 (D.C. Cir. 1934). But there is nothing in the law of the District of Columbia to suggest that petitioner was not liable to the partnership, and thereafter to the corporation, i.e., in the event of foreclosure, even though he may not have been liable to Wilkins .

The first issue for decision is whether petitioner is entitled to an interest deduction for the $9,826.86 paid in 1978, purportedly as interest on the Wilkins note. Section 163(a) allows as a deduction "all interest paid or accrued within the taxable year on indebtedness," and it is well settled that the indebtedness must be that of the taxpayer taking the deduction. *Southern Pacific Transportation Co. v. Commissioner*, 75 T.C. 497, 565 (1980); *Rushing v. Commissioner*, 58 T.C. 996, 1000 (1972). It is also well settled that to be a payment "on indebtedness," a payment must be for the use or forbearance of money. *Deputy v. du Pont*, 308 U.S. 488, 497 (1940); *Dean v. Commissioner*, 83 T.C. 56, 57 (1984). To effectuate these standards, this Court has stated that the interest deduction is allowable only where the payor's liability at the time of payment is primary and direct, see, e.g., *Hynes v. Commissioner*, 74 T.C. 1266, 1287–1288 (1980); however, it must be remembered that the primary and direct liability must be "on indebtedness," i.e., the payment must be made pursuant to an agreement providing either for the use of money by the payor or for the forbearance of enforcement of a money obligation of the payor.[4] See *Abdalla v. Commissioner*, 647 F.2d 487, 503–504 (5th Cir. 1981), affg. 69 T.C. 697, 707 (1978).

---

[4]The regulations have been said to provide an exception to the requirement of primary and direct liability on indebtedness—

"Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness. [Sec. 1.163-1(b). Income Tax Regs.]"

See *Rushing v. Commissioner*, 58 T.C. 996, 1000 (1972). However, this provision is not an exception to the rule stated in text, but is designed to recognize the "economic substance of nonrecourse borrowing," i.e., that default would affect only the person who would lose the securing property. *Golder v. Commissioner*, 604 F.2d 34, 36 (9th Cir. 1979), affg. a Memorandum Opinion of this Court; *Hynes v. Commissioner*, 74 T.C. 1266, 1288 (1980). Thus, the "exception" can be seen as a corollary: when *property owned by the taxpayer* secures a note on which the taxpayer pays interest, the interest payment is made under an agreement providing for the taxpayer's use of the money originally loaned in connection with the sale of the property. See *New McDermott, Inc. v. Commissioner*, 44 B.T.A. 1035, 1040–1041 (1941); see also *Golder v. Commissioner, supra* at 36 n. 1.

Thus, the deduction has been denied where the taxpayer paid interest on behalf of his corporation, even where the loan was executed by the taxpayer in his capacity as a corporate officer and the loan proceeds inured to the personal benefit of the taxpayer, as the taxpayer was not primarily and directly liable on the indebtedness. See *Golder v. Commissioner*, 604 F.2d 34 (9th Cir. 1979), affg. a Memorandum Opinion of this Court; *Reese v. Commissioner*, T.C. Memo. 1976–275, affd. on another ground 615 F.2d 226 (5th Cir. 1980). Moreover, a guarantor making an interest payment required due to a default by the debtor has been denied the deduction, as the obligation pursuant to which the guarantor pays interest is not the payor's debt obligation, but a guaranty agreement concerning another's debt obligation. *B.B. Rider Corp. v. Commissioner*, 725 F.2d 945, 950 (3d Cir. 1984); *Southern Pacific Transportation Co. v. Commissioner, supra* at 565; *Hynes v. Commissioner, supra* at 1287–1288.[5] However, a joint obligor who pays interest on the obligation may deduct such payment, as the payor is primarily and directly liable under his or her agreement for the use of money. See *Arrigoni v. Commissioner*, 73 T.C. 792, 806 (1980); *Williams v. Commissioner*, 3 T.C. 200, 202 (1944).[6]

At the time of the instant interest payments, the situation regarding the Wilkins note can be summarized as follows: The $299,900 Wilkins note was secured by a deed of trust on the DC real property, was without recourse to the partnership except to the extent of the "liquidation damages" specified in the purchase agreement as payable in the event of default on either the note or the senior indebtedness, and was subordinated to the $185,000 NS & T note, which was also secured by a deed of trust on the DC real property. Petitioner had personally guarantied the NS & T note, and had purported to

---

[5]Compare *Stratmore v. Commissioner*, T.C. Memo. 1984–547, with *Tolzman v. Commissioner*, T.C. Memo. 1981–689.

[6]This result has been called "anomalous" because joint obligors are presumably entitled to contribution against those joint obligors who do not pay their pro-rata share of the liability. See Asimow, "Failure to Establish a Debt as That of the Taxpayer Will Bar an Interest Deduction," 6 Taxation for Lawyers 230, 232 (1978). However, payments on a debt obligation on which the payor is primarily and directly liable satisfy sec. 163 irrespective of the fact that the *ultimate* liability on the debt falls on someone other than the payor. See *Mason v. United States*, 453 F. Supp. 845, 848–849 (N.D. Cal. 1978). But cf. *Abdalla v. Commissioner*, 69 T.C. 697, 707 (1978), affd. 647 F.2d 487, 503–504 (5th Cir. 1981), where the deduction was denied to a taxpayer who became directly liable to the creditor by virtue of local statutory provisions, which also gave the taxpayer full recourse against the other obligor.

assume the payment obligations on the Wilkins note as of May 11, 1978. The corporation had assumed the NS & T note obligation.

Petitioner argues that his assumption of the Wilkins note obligation transformed the partnership's nonrecourse[7] obligation into his personal recourse obligation, and contends that he was thus the primary debtor at the time of the interest payment. The corporation would, according to petitioner, be rightly denied the deduction in this situation. Respondent, characterizing the "assumption" as nothing more than an indirect obligation to make future capital contributions, argues that an assumption agreement works to transfer an indebtedness, for purposes of section 163, only where a grantee assumes mortgage liability upon transfer of the securing property from the mortgagor to the grantee. In any event, respondent asserts, the rights of mortgagee Wilkins cannot be changed even by a valid assumption, and these rights are only to the securing property plus the "liquidation damages."

The original debt agreement established the Wilkins note as an obligation running in substance between the creditor and the securing property. At that point, then, the only possible payor of deductible interest was the owner of the property, i.e., the partnership. See *supra* note 4. Petitioner's assumption, executed between himself and the partnership, was of a liability that was for the most part without recourse to the partnership. While in a mortgage-law sense, this agreement may merely have expanded the remedy of the creditor to include petitioner personally, a question under local law we find it unnecessary to address (see *supra* p. 896), in the context of section 163, the assumption created a new obligation, different from the underlying agreement for the use of money. Because of the inadequacy of the record herein as to the circumstances surrounding petitioner's assumption of liability (see *supra* p. 896), we cannot find that petitioner has carried his burden of proof (see Rule 142) that, in substance, this new obligation running between petitioner and the partnership should not be viewed either as an agreement to indemnify the partnership for its payments of principal and interest on the

---

[7]On brief, petitioner acknowledges that, despite the contingent personal liability arising from the "liquidation damages" clause, "the Wilkins obligation fits most closely within the definition and concept of a non-recourse mortgage."

note or as an agreement to contribute to the capital of the partnership, and subsequently of the corporation, any amounts needed to make those payments. In either case, petitioner's "interest" payments were made not in consideration of any right of petitioner to use money or to avoid enforcement by Wilkins of a money obligation of petitioner, but rather as consideration for an increased partnership interest. See *supra* p. 896.[8] Although Wilkins may, under local third-party beneficiary law, have had a cause of action against petitioner in the event petitioner failed to make the payments in question, petitioner's liability, i.e., his legal incentive to make the payments, would arise under the separate assumption agreement, and not an indebtedness agreement. Moreover, the provision for "liquidation damages" is of no avail to petitioner. Although the partnership's obligation to pay damages in the event of default in an amount equal to $106,746.75 at the time of petitioner's assumption was with full recourse, and such assumption therefore made petitioner an additional obligor thereon (see *Yasuna v. Miller, supra* at 73–74), any payments of "interest" as to this obligation were not for the use or forbearance of money, and, as noted above, are thus not deductible.

In short, despite the fact that petitioner was apparently ultimately liable for the payment of the sums represented by the Wilkins note, including interest, i.e., either as the partnership's and therefore the corporation's indemnitor or pursuant to a promise to make future contributions to capital,[9] in making the payments in question, petitioner was neither discharging a personal obligation of the partnership undertaken in respect of the money advanced by Wilkins nor protecting his use of the property securing that obligation.[10] Consequent-

---

[8]We note that, given more evidence, it is conceivable that a taxpayer in petitioner's position could convince us that he or she in substance borrowed money from the partnership to buy an increased partnership interest, and paid interest on *that* debt through the partnership to Wilkins, thus being entitled to an interest deduction and giving the partnership both interest income and an interest deduction. The record herein, however, does not support such a characterization.

[9]See *supra* note 6. Compare also the cases dealing with transferor-shareholders' warranties against liabilities of a corporation. *Leward Cotton Mills, Inc. v. Commissioner*, 245 F.2d 314 (4th Cir. 1957), revg. 26 T.C. 885 (1956); *Central Electric & Gas Co. v. United States*, 159 F. Supp. 353 (Ct. Cl. 1958); *Hanna Furnace Corp. v. Kavanagh*, an unreported case (E.D. Mich. 1950, 42 AFTR 1312, 50–2 USTC par 9443).

[10]Different considerations would apply, however, if either (1) the creditor had recourse to the prior obligor on the debt before the assumption or (2) the assuming party also acquired the securing property. The assumption in the former situation, rather than creating an obligation for

ly, even though petitioner may have been liable primarily and directly to Wilkins (see *supra* p. 896), he has not met the additional "on indebtedness" requirement of section 163. Accordingly, petitioner is not entitled to deduct those payments as interest.[11]

The remaining issue concerns the amount of gain recognized on the transfer of petitioner's partnership interest for stock in the corporation. Section 351(a) provides nonrecognition treatment for transfers of property solely in exchange for stock or securities of a controlled corporation, subject to the special rule found is section 357(c) for assumptions of liabilities. Sec. 351(f)(1). Section 357(a) provides that where, as part of a section 351 exchange, another party assumes a liability of, or acquires property subject to a liability from, the transferor, such assumption or acquisition will not run afoul of the "solely in exchange for stock or securities" requirement in section 351. However, section 357(c)(1) requires recognition of gain to the extent that "the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred" pursuant to the section 351 exchange.

In the instant case, petitioner transferred his interest in the partnership to the corporation in exchange for stock, the corporation assuming the partnership's $185,000 senior debt and succeeding to the partnership's interest in the DC real property.[12] As the gain provision of section 357(c) is to be

---

tax purposes that did not exist under the debt agreement, would merely place the assuming party in the position of the original obligor as regards the use or forbearance of money. Payments by the assuming party would thus be made pursuant to the original debt agreement, and would thus be "on indebtedness." In the latter situation, the policy enunciated in sec. 1.163–1(b), Income Tax Regs., would require allowance of the interest deduction in recognition of the economic substance of the nonrecourse debt. See *supra* note 4. In the instant case, in addition to the creation of a new obligation under which the "interest" payments were made, the assumption agreement did not change the fact that because the encumbered title to the DC real property was at all times held by the partnership entity (see D.C. Code sec. 41–107 (1981)), the partnership (and the corporation as its successor), and not petitioner, would be directly affected by a default on the debt obligation.

[11]We note that the fact that the payment in question constituted interest income to Wilkins has no bearing on this issue. See *Investors Insurance Agency v. Commissioner*, 72 T.C. 1027 (1979), affd. 677 F.2d 1328 (9th Cir. 1982).

[12]The stipulation of facts states only that the corporation assumed the $185,000 senior indebtedness; it is silent as to the obligation to Wilkins. However, the parties have argued the case on the basis that the corporation at most merely took the DC real property subject to the obligation to Wilkins and did not assume any recourse liability with respect thereto. For purposes of decision herein, we accept the factual basis of the parties' argument.

applied separately to each section 351 transferor (see Rev. Rul. 66–142, 1966–1 C.B. 66), we must determine both (1) the adjusted basis of petitioner's partnership interest immediately before the section 351 exchange, and (2) petitioner's share of the liabilities assumed by the corporation and those subject to which the corporation acquired the partnership interests (the section 357(c) liabilities).

We turn first to the question of the adjusted basis of petitioner's interest in the partnership transferred to the corporation in the incorporation transaction. Such basis may be calculated by reference to the relevant portions of sections 722, 752, and 705(a).

Section 722 provides that the basis of a partnership interest acquired by contribution of property, including money, is "the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution." Section 752(a) deems as a contribution of money, for purposes of section 722, "Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities." Section 705(a) adjusts the adjusted basis of the partner's interest as determined under section 722 by increasing such basis by the partner's distributive share of partnership income, and decreasing such basis (but not below zero) by distributions by the partnership and by the partner's distributive share of partnership losses. See also sec. 733. Section 752(b) deems as a distribution of money, for purposes of section 705(a), "Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities." For purposes of section 752, "a liability to which property is subject shall, to the extent of the fair market value of such property, be considered as a liability of the owner of the property." Sec. 752(c).

The parties, while disagreeing on many aspects of the basis calculation, appear to agree that petitioner's basis in the partnership at the beginning of 1978, before consideration of the Wilkins and NS & T liabilities and the withdrawal of the Smith Co. assets, was zero. The first item on which there is disagreement is the partnership liabilities. As of January 1,

1978, the partnership had obligations in the principal amounts of $87,500 and $5,995 to NS & T Bank, and $299,900 to Wilkins. A partner's share of the partnership liabilities, for purposes of section 752, is to be "determined in accordance with his ratio for sharing losses under the partnership agreement." Sec. 1.752–1(e), Income Tax Regs. However,

> where none of the partners have *any* personal liability with respect to a partnership liability (*as in the case of a mortgage on real estate acquired by the partnership without the assumption by the partnership or any of the partners of any liability on the mortgage*), then all partners, including limited partners, shall be considered as sharing such liability under section 752(c) in the same proportion as they share the profits. [Sec. 1.752–1(e), Income Tax Regs.; emphasis added.]

In the District of Columbia, the partnership agreement controls the partners' shares of profits and losses. D.C. Code Ann. sec. 41–117(1) (1981).[13]

In the instant case, the partnership agreement simply allocates profits and losses "in accordance with the agreement of the parties." As petitioner deducted the full partnership loss for the first part of 1978, the partners then in place appear implicitly to have agreed to allocate 100 percent of partnership losses to petitioner, and respondent does not dispute this allocation. As NS & T Bank presumably had recourse to the partnership as to the $5,995 unsecured note and the $87,500 secured note, petitioner correctly added the full $5,995 and $87,500 to his basis. Secs. 752(a), 722. With respect to the Wilkins note in the amount of $299,900, the requirements of the portion of section 1.752–1(e), Income Tax Regs., *supra*, dealing with nonrecourse liability have not been met, as the partnership had assumed *some* recourse liability on that obligation, i.e., the "liquidation damages."[14] Thus, the loss

---

[13]The rights and duties of the parties in relation to the partnership shall be determined, *subject to any agreement between them*, by the following rules:

"Each partner shall * * * share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute toward the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits * * * [D.C. Code Ann. sec. 41–117(1) (1981); emphasis added.]"

[14]Cf. *Laney v. Commissioner*, 674 F.2d 342, 348–349 (5th Cir. 1982), affg. on this issue a Memorandum Opinion of this Court (partner's retained personal liability renders note recourse, for purposes of sec. 1.752–1(e), Income Tax Regs.); Rev. Rul. 83–151, 1983–2 C.B. 105; H. Rept. 98–861 (Conf.) (1984), 1984–3 C.B. (Vol. 2) 1, 122–123 (explaining that Pub. L. 98–369, sec. 79, 98 Stat. 597 (1984), overruling *Raphan v. United States*, 3 Cl. Ct. 457 (1983), revd. on this issue 759 F.2d 879, 887 (Fed. Cir. 1985), requires that notes on which a partner is primarily or secondarily liable be characterized as recourse, for purposes of sec. 1.752–1(e), Income Tax Regs, *supra*).

allocation percentage applies, and petitioner's basis is increased by the full principal amount of the partnership obligations.

The parties agree that the withdrawal of the Smith Co. assets decreased the basis in petitioner's partnership interest by $178,485.83 (secs. 705(a), 733), that petitioner's deduction of the partnership operating loss decreased his basis by $10,865 (sec. 705(a)), and that petitioner's capital contribution increased his basis by $8,000 (sec. 722). Thus, before any partnership interests changed hands, petitioner's basis was $212,044.17, and his share of the partnership liabilities was $393,395. For the detailed calculation of petitioner's basis and share of liabilities, see Appendix, pages 911–912.

Respondent argues that, upon Murphy's purchase of a partnership interest for $50,000, petitioner's share of the partnership liabilities decreased because any implicit agreement among petitioner, Bernard, and Crothers regarding the allocation of losses to petitioner does not necessarily apply to new partners. We agree. Moreover, neither in his original nor his reply brief, does petitioner appear to contest this element of respondent's position herein. Once Murphy became a member of the partnership, there was no "agreement of the partners" as to loss allocation, and the partnership agreement thus ceased to provide for such allocation. Thus, section 704(b)(1) comes into play, and, for tax purposes, petitioner's "distributive share of * * * loss * * * shall be determined in accordance with the partner's interest in the partnership (determined by taking into account all facts and circumstances)."[15] The only indication in the record of just how much of an interest Murphy purchased is that upon incorporation, Murphy received 8 percent of the shares of the corporation. Under these circumstances, and in the absence of any other explanation by respondent of his use of 10 percent, we hold that Murphy was, under section 704(b)(1), entitled to share in partnership losses to the extent of 8 percent and that petitioner's share of the liabilities, and thus his basis, decreased by $31,471.60 (.08 × $393,395) when Murphy became a partner. See secs. 752(b), 705(a); cf. *Richardson v. Commissioner*, 76 T.C. 512, 528–530 (1981), affd. 693 F.2d 1189 (5th Cir. 1982).

---

[15]For the default provision for purposes of State (i.e., District of Columbia) law, see *supra* note 13.

Petitioner, then, owned 92 percent of the partnership after buying the interests of Bernard and Crothers for $197,000. This buy-out increased petitioner's basis by the $197,000 cost of the interest. See sec. 742. There is no increase in petitioner's share of the liabilities, as no part of the partnership liabilities was allocated to Bernard and Crothers under the agreement of the partners.

Petitioner's basis also increased when the partnership refinanced the old NS & T note with a new senior trust indebtedness of $185,000. Since, for aught that appears, this note was a recourse obligation of the partnership, the loss allocation percentage controls. That petitioner guarantied this note does not change its characterization as a liability of the partnership. *Proesel v. Commissioner*, 77 T.C. 992, 1004 (1981); see Volet & Millman, "Liability Assumption Under Section 752: An Analysis of the Underlying Theory," 60 J. Tax. 374, 376 (1984). Thus, since Murphy had an 8-percent interest in the partnership, petitioner's basis increased by $170,200 (.92 × $185,000) when the partnership incurred the new obligation, and decreased by $80,500 (.92 × $87,500) since the new obligation replaced the old note, which in fact was paid off pursuant to the refinancing. At this point, petitioner's basis in the partnership was $467,272.57, and his share of the partnership liabilities was $451,623.40.

Petitioner next sold the partnership interests of Bernard and Crothers to Minnie Smith. The parties agree that petitioner's basis decreased by the $197,000 interest transferred. Petitioner, however, fails to take account of the share of the partnership liabilities transferred to Mrs. Smith as part of the transaction. Again, once new partners joined the partnership, the implicit agreement to allocate losses no longer existed, and section 704(b)(1) operates to allocate losses, and thus partnership liabilities, on the basis of the partners' interests in the partnership. Once again looking forward to the incorporation, we see that petitioner and Mrs. Smith ended up with approximately equal numbers of shares. Thus, we find that petitioner, in selling the Bernard and Crothers interests to Mrs. Smith, transferred one-half of his 92-percent interest,[16] resulting in a

---

[16]This result is supported by the fact that petitioner stated on brief that his agreement to pay $197,000 for the Bernard and Crothers interests "evidences a de facto agreement" that such interests represented a 50-percent profits interest, as $197,000 approximates 50 percent of the then net worth of the partnership ($403,605, i.e., $797,000 − $393,395).

reduction of his share of the partnership liabilities, and thus of his basis, of $225,811.70 (.50 × $451,623.40). See secs. 752(b), 705(a); cf. *O'Brien v. Commissioner*, 77 T.C. 113, 116–118 (1981).

The trust then purchased from petitioner "a 25 percent capital interest in the partnership." Before this transaction, petitioner's basis stood at $44,460.87. Petitioner argues that this 25-percent interest had no basis, while respondent would *increase* petitioner's basis as a result of the sale, arguing that petitioner transferred 25 percent of a partnership interest that then had a negative basis. To begin with, section 705(a) specifically forbids the use of a negative basis in the computation of the basis of a partnership interest. See also sec. 733. Moreover, petitioner transferred to the trust *a 25-percent interest* in the partnership, not 25 percent of *his* interest in the partnership. Thus, as petitioner held a 46-percent interest in the partnership after the sale to Mrs. Smith (i.e., one half of 92 percent), he would have had to transfer 54.3 percent (.25/.46) of his 46-percent interest to give the trust a 25-percent interest in the partnership. Petitioner's basis, then, decreased by $24,142.25 (.543 × $44,460.87) to reflect the transferred interest, and $122,615.75 (.543 × $225,811.70) to reflect the lost share of liabilities. However, since petitioner's basis could be reduced only to zero, only $20,318.62 of the latter basis reduction could be used.[17] Petitioner's basis at this point was thus zero, and his share of the partnership liabilities was $103,195.95.

Petitioner next executed the "Assumption of Liability" agreement regarding the $299,900 Wilkins note. We have already held, in the context of the interest deduction, that the payments under this agreement were not interest "on indebtedness" within the meaning of section 163. The question now is whether the agreement was effective to increase petitioner's liabilities for purposes of section 752(a), i.e., whether the "assumption" was an "assumption by such partner of partner-

---

[17]We note that, although respondent did not argue this point, the remaining $102,297.13 is deemed a money distribution to petitioner under sec. 752(b) not only for purposes of sec. 705(a), but also for purposes of sec. 731(a)(1), under which gain is to be recognized "to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution." See *Richardson v. Commissioner*, 76 T.C. 512, 528–530 (1981), affd. 693 F.2d 1189 (5th Cir. 1982); *O'Brien v. Commissioner*, 77 T.C. 113, 116–117 (1981). As respondent did not address the sec. 731 implications of the share of liabilities transferred to the trust, however, we decline to impose our analysis or its resulting tax consequences on petitioner.

ship liabilities." As indicated above, the substance of petitioner's assumption is that the partnership continued to be at risk as to the securing property, and petitioner was liable to the partnership (and later to the corporation) as an indemnitor (or under an obligation to make contributions to capital) for any loss sustained in the event of default. Thus, although the partnership property was still subject to foreclosure if the mortgage was not paid, the ultimate liability fell upon petitioner.

The regulations give the following example of the application of section 752(a)—

equal partnership AB owns real property with an adjusted basis to the partnership of $1,000, a fair market value of $800, and which is subject to a mortgage of $400 which the partnership has not assumed. The mortgage is considered as a liability of the partnership under section 752(c). Since A and B each share one-half thereof, under section 752(a) the liability of each has been increased $200. Under section 722 such $200 increase is reflected in the basis of each partner for his interest. The real property is distributed by the partnership to A. Under the provisions of section 733(2), there is a net decrease of $800 in A's basis for his partnership interest. This amount is computed as follows: *The basis of A's partnership interest is* decreased in the distribution by $1,000 (the partnership basis for the distributed property) and further decreased under section 752(b) by $200 (the decrease in A's share of partnership liabilities) and *increased under section 752(a) by $400 (the increase in A's individual liability by reason of section 752(c)).* [Sec. 1.752–1(a)(2), Income Tax Regs.; emphasis added.]

Thus, respondent has recognized that ultimate liability is the test under section 752; in this example, the property is in the hands of A, and the partnership, in whose hands the property was originally liable to the mortgagee, has no further responsibility in respect of the mortgage obligation. A's basis is increased irrespective of the fact that the mortgagee was not a party to the transaction.

We think that the same reasoning should apply in the instant case. To be sure, the partnership herein retained the property and thus was, in the first instance, exposed to the risk of foreclosure. In that event, however, the partnership could look to petitioner, who had an unconditional obligation to make the partnership whole by virtue of the assumption agreement. Section 752 provides for the constructive contribution of cash in order to treat a partner who assumes an obligation of the partnership exactly as if he or she had given

the partnership the money with which to discharge the debt. See *Long v. Commissioner* 71 T.C. 1, 9 (1978), remanded on other issues 660 F.2d 416 (10th Cir. 1981). Where, as here, the partner becomes ultimately liable to pay the debt, it is irrelevant for purposes of section 752(a) that the partnership or its property remains liable to the mortgagee. See Volet & Millman, *supra* at 376; cf. *Long v. Commissioner, supra* at 8–10; G.C.M. 35627 (Jan. 16. 1974); compare Rev. Rul. 69–223, 1969–2 C.B. 184, with Private Letter Rul. 8404012 (Oct. 13, 1983). But cf. *Danoff v. United States*, 499 F. Supp. 20 (M.D. Pa. 1979).[18] By taking on ultimate and unconditional liability, petitioner constructively contributed the amount of the indebtedness to the partnership, and was thus entitled to increase his basis by $236,921 (i.e., his basis increased by the full $299,900 individual liability and decreased by his share of the partnership's former liability, $62,979 (.21 × $299,900)).

Finally, petitioner withdrew $95,515 from the partnership. At the time of this distribution, petitioner's basis was $236,921. Thus, the section 731 issue with respect to this distribution, raised by respondent for the first time on brief, is moot, and, under sections 733 and 705(a)(2), petitioner's basis immediately before the incorporation was $141,406 ($236,921 less $95,515).

Now that we have determined petitioner's basis in the partnership immediately before the incorporation transaction, computation of section 357(c) gain requires a determination of (1) the amount of the section 357(c) liabilities, i.e., those assumed by, or to which property was taken subject by, the corporation, and (2) petitioner's share of such liabilities. The parties agree that the $185,000 note, assumed by the corporation, qualifies as a section 357(c) liability. However, petitioner contends that *his* assumption of the $299,900 obligation takes

---

[18]We note that, for purposes of sec. 752, petitioner's status either as an indemnitor of the partnership or as one obligated to make capital contributions thereto, i.e., having no rights over against the partnership or other parties, is different from that of a guarantor, who has a contractual right over against the defaulting party, and is thus not ultimately liable. See Volet & Millman, "Liability Assumption Under Section 752: An Analysis of the Underlying Theory," 60 J. Tax. 374, 376 (1984). In the latter situation, the basis of guarantor-partner's partnership interest is not increased by the amount of the partnership debt guaranteed. See *Proesel v. Commissioner*, 77 T.C. 992, 1004 (1981). The conclusion in *Raphan v. United States*, 759 F.2d 879, 886 (Fed. Cir. 1985), revg. on this issue 3 Cl. Ct. 457 (1983), is only that *limited* partners do not share in debt guarantied by a general partner; the court did not have before it the question of to which of the *general* partners such debt is allocated.

that debt outside the realm of section 357(c). In petitioner's view, as petitioner transferred to the corporation his unencumbered partnership interest, there is no liability to which section 357(c) can be said to apply. We disagree.

The question of the effect of petitioner's assumption for purposes of determining the amount of the section 357(c) liabilities is different from that of its effect for purposes of either section 163 or section 752(a). While, as previously noted, section 163 requires that petitioner be primarily and directly liable "on indebtedness," and section 752(a) requires that petitioner undertake ultimate liability on the obligation, section 357(c) requires only that the corporation take the property acquired in the exchange subject to the obligation. Generally, a transfer subject to a mortgage is an agreement that, as between the transferee and the transferor, the debt is to be satisfied out of the land. G. Osborne, Mortgages 507 (2d ed. 1970). So long as the transferred property remains liable on the debt, then, such debt can be a section 357(c) liability even if petitioner retained personal, unrelieved liability on it. *Rosen v. Commissioner*, 62 T.C. 11, 19 (1974), affd. without published opinion 515 F.2d 507 (3d Cir. 1975); see DeBerry, "Current Problems With the Assumption of Liabilities in Incorporation Transactions," N.Y.U. 37th Inst. on Fed. Tax. (Part 1) 4–1, 4–6 to 4–7 (1979).[19] In fact, we have held that a pre-incorporation paper transaction making the excess of liabilities assumed by the corporation over the basis of the assets transferred personal liabilities of the transferor does not remove the liabilities from section 357(c). *Alderman v. Commissioner*, 55 T.C. 662 (1971).

In the instant case, petitioner's assumption, although placing ultimate liability on petitioner to make the partnership (and its corporate successor) whole in the event of foreclosure, did not change the fact that the DC real property was liable to Wilkins on the note.[20] Petitioner argues that the $299,900 debt

---

[19]See also *Beaver v. Commissioner*, T.C. Memo. 1980–429. But cf. *Jackson v. Commissioner*, 708 F.2d 1402 (9th Cir. 1983), revg. a Memorandum Opinion of this Court (continuing liability of transferor, so no sec. 1001 exchange; no sec. 357(c) liabilities, as the only liability involved could not legally have been assumed), questioned in 1 W. McKee, W, Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, par. 6.03, at S6–4 n. 35.1 (Supp. 1984).

[20]Although it is possible that Wilkins would, under District law, have a direct claim against petitioner as a third-party creditor beneficiary (see *supra* p. 896), the fact remains that the creditor could choose to enforce his contractual right against the property upon default. Thus, the DC real property was transferred subject to the mortgage.

is not a section 357(c) liability because the corporation acquired the partnership *interests,* and not its *assets.* Thus, according to petitioner, the property actually transferred was not subject to the Wilkins note obligation. The cases cited by petitioner indeed demonstrate a refusal to view sales of partnership interests as sales of partnership assets, but such refusal is in the context of deciding whether the gain from such sales is entitled to capital gain treatment under section 741. The courts, deciding cases of that genre on their individual facts, have variously characterized sales of partnership interests as sales of interests and sales of assets. Compare *Thornley v. Commissioner,* 147 F.2d 416 (3d Cir. 1945), and *Barran v. Commissioner,* 334 F.2d 58 (5th Cir. 1964), with *Harris v. Commissioner,* 61 T.C. 770 (1974).

In the context of deciding whether the transferee corporation took property subject to an obligation, however, different considerations apply. Section 357(c) requires only that the debt be secured by property transferred to the corporation. See *Testor v. Commissioner,* 40 T.C. 273, 275 (1963), affd. 327 F.2d 788 (7th Cir. 1964).[21] Where, as here, the partnership interests transferred are themselves encumbered in substance by a right of foreclosure on the partnership's real property, the corporation acquires such interests subject to the encumbrance. See *Commissioner v. Tufts,* 461 U.S. 300 (1983); Rev. Rul. 80–323, 1980–2 C.B. 124; see also 2 A. Willis, J. Pennell & P. Postlewaite, Partnership Taxation, sec. 101.03 (3d ed. 1982). Indeed, without such looking through the partnership interest, the impact of section 357(c) could easily be circumvented on incorporations of partnerships; only in rare instances would the partnership interest being transferred be actually encumbered by any liabilities of the transferring partner. Cf. *Alderman v. Commissioner, supra* at 665. Thus, the partners transferred to the corporation interests in the DC real property that were in substance subject to their shares of the $299,900 debt, and the section 357(c) liabilities include both the $185,000 and $299,900 notes.[22]

---

[21]See also *Beaver v. Commissioner, supra.*

[22]We note that there is no indication in the record herein either that the $5,995 NS & T note was assumed or that the corporation took the partnership interests subject to such note. Similarly, we have no way of knowing whether there were other liabilities (the May 11, 1978, position of the partnership shows $12,100 in miscellaneous liabilities). (See *supra* p. 895.) As the parties have not adequately addressed the issue of the disposition of such liabilities, we have concluded that they should be ignored.

Given the calculations already performed, petitioner's share of the section 357(c) liabilities may easily be computed. Originally, petitioner was allocated 100 percent of the $393,395 partnership liabilities. When Murphy bought into the partnership, petitioner's share was reduced to 92 percent. After selling one half of his interest to Mrs. Smith, petitioner's interest stood at 46 percent. When the trust purchased a 25-percent interest in the partnership from petitioner, petitioner transferred 54.3 percent of his 46-percent interest, leaving petitioner with a 21-percent share of the partnership liabilities (i.e.,. 457 × .46). With regard to the Wilkins note obligation, the assumption, as held above, had no effect for section 357(c) purposes on the liability as between petitioner and the partnership, i.e., the property remained subject to the mortgage. However, the assumption, also as held above, did increase the basis of the property transferred by petitioner to the corporation, i.e., his partnership interest, with the result that, as among the partners, the liability was petitioner's for purposes of section 357(c). Thus, petitioner's share of the $484,900 section 357(c) liabilities was $338,750 ($299,900 + (.21 × $185,000)). Given the $141,406 basis in petitioner's partnership interest immediately before the incorporation, petitioner's section 357(c) gain is $197,344.

In accordance with the parties' stipulations,[23] and with the foregoing opinion,

*Decision will be entered under Rule 155.*

---

## APPENDIX

CALCULATION OF SMITH'S BASIS AND SHARE OF LIABILITIES

|  | Share of liabilities | Basis |
| --- | --- | --- |
| Partnership debt: |  |  |
| Wilkins Note | $299,900.00 | $299,900.00 |
| NS & T note | 87,500.00 | 87,500.00 |
| Other | 5,995.00 | 5,995.00 |
|  | 393,395.00 | 393,395.00 |

---

[23]See *supra* note 2.

|                                    | Share of liabilities | Basis           |
| ---------------------------------- | -------------------- | --------------- |
| Asset withdrawal                   | 0                    | ($178,485.83)   |
| Operating loss                     | 0                    | (10,865.00)     |
| Capital contribution               | 0                    | 8,000.00        |
|                                    |                      | 212,044.17      |
| Admission of Murphy                | ($31,471.60)         | (31,471.60)     |
|                                    | 361,923.40           | 180,572.57      |
| Buy-out of Bernard and Crothers    | 0                    | 197,000.00      |
| Refinancing of note                |                      |                 |
|   New $185,000 note      | 170,200.00           | 170,200.00      |
|   Payoff $87,500 note    | (80,500.00)          | (80,500.00)     |
|                                    | 451,623.40           | 467,272.57      |
| Sale to Mrs. Smith                 |                      | (197,000.00)    |
|                                    | (225,811.70)         | (225,811.70)    |
|                                    | 225,811.70           | 44,460.87       |
| Sale to Trust                      |                      | (24,142.25)     |
|                                    | (122,615.75)         | (20,318.62)     |
|                                    | 103,195.95           | 0               |
| "Assumption of Liability"          | 236,921.00           | 236,921.00      |
| Withdrawal of $95,515              | 0                    | (95,515.00)     |
| Totals before incorporation        | 340,116.95           | 141,406.00      |