T.C. Summary Opinion 2004-69


UNITED STATES TAX COURT


LORIANNE BLAKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3583-03S.                    Filed May 20, 2004.


Lorianne Blake, pro se.

<u>Jeremy L. McPherson</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioner's Federal income taxes of $4,191 for 1998 and $3,073 for 1999. After concessions,[1] the issue remaining for decision[2] is whether petitioner is entitled to costs of goods sold and deductions on Schedule C, Profit or Loss From Business, in excess of those allowed by respondent.

## Background

The stipulation of facts and exhibits received into evidence are incorporated herein by reference. Petitioner resided in Chico, California, at the time the petition was filed.

During 1998 and 1999, petitioner did sales work for Norfield Industries in Chico, California. During those years, petitioner was also engaged as a distributor of "Herbalife" products. On her 1998 and 1999 Forms 1040, U.S. Individual Income Tax Return, petitioner reported income and expenses from her Herbalife activities on Schedules C. Petitioner described her activity as "Nutrition Consultant."

---

[1]In the notice of deficiency, respondent disallowed auto expenses of $1,863 for 1998 and $3,495 for 1999, and other interest expenses of $731 for 1998 and $83 for 1999. Additionally, respondent determined that petitioner received advance earned income credit payments during 1998 and 1999 in the amounts of $1,173 and $1,126, respectively. Petitioner did not report the 1998 advance earned income credit payment on her tax return. Petitioner has conceded these issues.

[2]The amounts of any liabilities for and deductions of self-employment taxes depend on the resolution of the other issues in this case.

1.  Product-Related Expenses

Petitioner claimed deductions for "advertising" on line 8 of her 1998 and 1999 Schedules C in the amounts of $4,964 and $5,160, respectively.  Approximately $1,000 of her claimed advertising expense for 1998 and $1,500 for 1999 was for samples which she gave away.  The remaining $3,964 for 1998 and $3,660 for 1999 of petitioner's advertising expenses was for Herbalife products which petitioner used personally.  Petitioner did not maintain any records of the products that she gave away or for the products she used herself.

The amounts petitioner deducted as advertising expenses were based upon the retail value of the items, not on the amount which petitioner had actually paid for the products.  Petitioner's actual merchandise costs were $3,276 in 1998, and $3,406 in 1999. Respondent disallowed all of petitioner's claimed advertising expenses.

Petitioner also reported costs of goods sold on her 1998 and 1999 Schedules C in the amounts of $6,240 and $5,913, respectively.  In calculating costs of goods sold, line 36 of Schedule C reports "Purchases less cost of items withdrawn for personal use".  Petitioner entered the total amounts she paid for Herbalife products for each year.  Those amounts were $6,009 and $6,128 for 1998 and 1999, respectively.  Petitioner did not subtract from these amounts the value of products which she used

personally or gave away and for which she had simultaneously claimed a deduction for advertising expenses. Respondent disallowed $4,964 and $5,160 for 1998 and 1999, respectively, of the total amounts which petitioner had claimed as costs of goods sold.

2. <u>Mortgage Interest</u>

In 1984, petitioner and her then husband, John Little (Mr. Little), borrowed $25,000 from Tri-Counties Bank, to pay expenses incurred in their children's apparel business. Petitioner's father, Vernon Blake (Mr. Blake), cosigned the note. Petitioner and Mr. Little signed a "Security Agreement" with Mr. Blake and signed quitclaim deeds on three properties as security for Mr. Blake. Mr. Blake did not record his security interests in any of the three properties.

In 1987, petitioner and Mr. Little filed a voluntary Chapter 7 Bankruptcy Petition. Mr. Blake never attempted to foreclose upon his security interests in any of the properties.

During the bankruptcy, petitioner and Mr. Little relinquished their interests in the properties. The bankruptcy trustee disposed of the properties, and Mr. Blake did not receive any of the properties or the proceeds from their sale. Petitioner does not have any records from the 1987 bankruptcy and does not know whether her father filed a claim or received any distributions from the bankruptcy.

Some time after 1984, the $25,000 loan with Tri-Counties Bank was converted to a "line of credit" with Bank of America in Mr. Blake's name. As of 1996, the amount Mr. Blake owed on the Bank of America line of credit was still unpaid.

In 1996, Mr. Blake took out a mortgage on his home in the amount of $30,000. Before this mortgage, Mr. Blake had owned the home free and clear of any debts or encumbrances since he had purchased it in 1993.

Mr. Blake and Bank of America agreed: (a) That $14,832 of the $30,000 mortgage would be applied against the line of credit which Mr. Blake owed to Bank of America; (b) that $6,664 of the $30,000 mortgage would be applied against a VISA account held by petitioner and her father with Bank of America; and (c) that Bank of America would forgive $5,735[3] of debt owed by Mr. Blake to Bank of America.

Petitioner and her father both lived in the home from January 1998 through August 1998 when Mr. Blake died. Petitioner inherited the house and has continued to live there since her father's death.

Petitioner made all of the mortgage payments on the home during 1998 and 1999, but the mortgage account remained in her father's name. The interest portions of the mortgage payments

---

[3]Bank of America reported to the I.R.S. that, for the 1996 tax year, Mr. Blake had $5,735 of income from debt cancellation.

for 1998 and 1999 totaled $2,370 and $2,346, respectively. Petitioner claimed mortgage interest deductions in these amounts on her 1998 and 1999 Schedules C. Respondent disallowed these amounts in full.

## Discussion

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers generally bear the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The resolution of the issues in this case does not depend on which party has the burden of proof. The Court resolves these issues on the preponderance of evidence in the record. Therefore section 7491 does not apply here.

### 1. Product-Related Expenses

Section 162(a) allows a taxpayer deductions for ordinary and necessary business expenses incurred during the taxable year in carrying on a trade or business. Generally, a taxpayer must establish that deductions taken pursuant to section 162 are ordinary and necessary business expenses and must maintain records sufficient to substantiate the amounts of the deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Section 262, however, expressly provides that no deduction shall be allowed for personal, living, or family expenses.  For each of the years in issue, petitioner claimed a Schedule C deduction for advertising expenses for Herbalife products she purchased.  However, petitioner personally consumed the majority of the Herbalife products she purchased.  She also gave away an undocumented portion of the purchases as samples.

Additionally, in computing her costs of goods sold, petitioner failed to deduct from her purchases the products she consumed personally or gave away.  As a result, petitioner's costs of goods sold are improperly inflated.  As detailed supra, petitioner deducted these same amounts as advertising expenses.

To allow petitioner not only to report these amounts as costs of goods sold but also to deduct them as advertising expenses would allow her "the practical equivalent of double deduction."  United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969); Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 68 (1934); United Telecomm., Inc. v. Commissioner, 589 F.2d 1383, 1388 (10th Cir. 1978), affg. 67 T.C. 760 (1977) and 65 T.C. 278 (1975).

As this Court has previously held, "The Code 'should not be interpreted' to allow double deductions for the same amount 'absent a clear declaration of intent by Congress,' * * * and we do not think section 162(a) reflects any such intent."  Brenner v. Commissioner, 62 T.C. 878, 885 (1974) (quoting United States

v. Skelly Oil Co., supra at 684). The Court sustains respondent's determinations disallowing petitioner's advertising expense deductions and the improperly claimed amounts for costs of goods sold.

2. Mortgage Interest

For 1998 and 1999, petitioner claimed deductions for mortgage interest on her Schedules C. Petitioner alleges she paid a mortgage in her father's name largely because Mr. Blake assumed in full and refinanced petitioner's 1984 business loan which he had originally cosigned. Petitioner has not provided evidence to show what portion of the mortgage payments, if any, represents interest on the debt she owed her father. Therefore, she is not entitled to Schedule C business interest deductions.

Section 163(a) allows a deduction for interest paid or accrued within the taxable year on indebtedness. The "indebtedness" for purposes of section 163 must, in general, be an obligation of the taxpayer and not an obligation of another. Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), affg. T.C. Memo. 1976-150; Smith v. Commissioner, 84 T.C. 889, 897 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986); Hynes v. Commissioner, 74 T.C. 1266, 1287 (1980). However, section 1.163-1(b), Income Tax Regs., provides, in pertinent part:

> Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness. * * *

Only interest paid on a mortgage on property for the period after the taxpayer becomes the legal or equitable owner of the property is deductible by the taxpayer as interest on her indebtedness. Zards v. Commissioner, T.C. Memo. 1995-497 (citing Hyde v. Commissioner, 64 T.C. 300, 306 (1975)).

State law determines the nature of property rights, and Federal law determines the appropriate tax treatment of those rights. See United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985); Aquilino v. United States, 363 U.S. 509, 513 (1960). Thus, whatever rights or interests, if any, petitioner held in the property during the years at issue must be determined by applying applicable California law.

Under California law, title to the property of a decedent's estate vests, subject to administration, in his or her heirs or devisees and legatees immediately on death. Cal. Prob. Code sec. 7000 (West 2004); Olson v. Toy, 54 Cal. Rptr. 2d 29, 33 (Ct. App. 1996) (citing Dorland v. Dorland, 3 Cal. Rptr. 262, 265 (Dist. Ct. App. 1960)); Raczynski v. Judge, 230 Cal. Rptr. 741, 745 (Ct. App. 1986). Such vesting is not contingent on any assent, acceptance, or election by the heirs. Estate of Taylor v. Crippled Children's Socy., 108 Cal. Rptr. 778, 781 (Ct. App.

1973) (citing <u>Estate of Meyer v. McGrath</u>, 238 P.2d 597, 605 (Cal. Dist. Ct. App. 1951)).  Thus, here, legal title to the property passed to petitioner at the time of Mr. Blake's death, in August 1998.

The Court holds that petitioner is entitled only to mortgage interest deductions on Schedules A, Itemized Deductions, for the interest portion of mortgage payments she made on the property from the date of Mr. Blake's death in August 1998 through December 1999.  Petitioner is not entitled to a mortgage interest deduction on Schedule A for payments she made prior to Mr. Blake's death because she was not directly liable on the note securing the mortgage and she has failed to prove that she was the legal, equitable, or beneficial owner of the property during that period.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155</u>.