153 T.C. No. 1

UNITED STATES TAX COURT

WILLIAM C. LIPNICK AND DALE A. LIPNICK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1262-18.                          Filed August 28, 2019.

P-H's father owned interests in partnerships that made debt-financed distributions to the partners. P-H's father used the proceeds of those distributions to purchase assets that he held for investment. P-H's father treated the interest paid by the partnerships on those debts and passed through to him as "investment interest" subject to the limitation on deductibility imposed by I.R.C. sec. 163(d).

In 2011 and 2013 P-H's father transferred interests in the partnerships to P-H by gift and bequest. The partnerships continued to incur interest expense on the debts, which was passed through to P-H as a new partner. P-H treated the debts as properly allocable to the partnerships' real estate assets and reported the interest expense on his 2013 and 2014 Schedules E, Supplemental Income and Loss, as offsetting the passed-through real estate income.

For Ps' taxable years 2013 and 2014, R characterized the interest passed through to P-H as "investment interest." Because Ps had

insufficient investment income for these years, R disallowed 100% of the deductions for interest expense under I.R.C. sec. 163(d).

1.     <u>Held</u>: P-H, unlike his father, did not receive the proceeds of any debt-financed distributions and did not use partnership distributions to acquire property held for investment. Rather, he is deemed to have made a debt-financed acquisition of the partnership interests he acquired by gift and bequest, and the associated interest expense is allocated among the assets of the partnerships.

2.     <u>Held</u>, <u>further</u>, because the assets owned by the partnerships were not property held for investment, none of the interest expense passed through to P-H was "investment interest" subject to limited deductibility under I.R.C. sec. 163(d).

3.     <u>Held</u>, <u>further</u>, the interest expense passed through to P-H cannot be characterized as "investment interest" on the theory that he stepped into his father's shoes.

<u>Michael I. Sanders</u> and <u>Jill E. Misener</u>, for petitioners.

<u>William J. Gregg</u>, <u>Bartholomew Cirenza</u>, and <u>Benjamin H. Weaver</u>, for respondent.

OPINION

LAUBER, <u>Judge</u>: With respect to petitioners' Federal income tax for 2013 and 2014, the Internal Revenue Service (IRS or respondent) determined deficiencies and accuracy-related penalties as follows:

| Year | Deficiency | Penalty |
|------|-----------|---------|
| 2013 | $269,202 | $53,840 |
| 2014 | 286,232 | 57,246 |

During 2013 and 2014 petitioner husband (William or petitioner) participated in real estate partnerships that incurred interest expense. The real estate income and associated expenses were passed through to him, and petitioners reported those items on Schedules E, Supplemental Income and Loss. The question presented is whether petitioners properly offset the interest expense in full against the real estate income on Schedules E, or whether (as respondent contends) they should have reported the interest expense on Schedules A, Itemized Deductions, subject to the limitation imposed by section 163(d) on "investment interest."[1] We decide this question in petitioners' favor, thus absolving them both of the deficiencies and of the penalties.

## Background

The parties submitted this case for decision without trial under Rule 122. Relevant facts have been stipulated or are otherwise included in the record. See

---

[1]All statutory references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

Rule 122(a). Petitioners resided in Washington, D.C., when they filed their petition.

A.   Lipnick/Cafritz Partnerships

William is the son of Maurice Lipnick (Maurice), who died in October 2013 at age 95. For many years Maurice participated in partnerships with Calvin Cafritz, a legendary real estate entrepreneur in the Washington, D.C., area. These partnerships owned and operated rental real estate in the District and its suburbs. As of 2009 Maurice's investments[2] included a 50% interest in Mar-Cal, LLC (Mar-Cal), which owned apartment buildings in the District and suburban Maryland; a 50% interest in Mayfair House Apartments (Mayfair), which owned an apartment building in Falls Church, Virginia; and a 25% interest in Brinkley Associates, LLC (Brinkley), which owned rental real estate in Temple Hills, Maryland. The remaining interest in each partnership was held by Mr. Cafritz.

In June 2009 Mar-Cal, Mayfair, and Brinkley borrowed money from M&T Realty Capital Corp. (M&T) and distributed the proceeds to Maurice and Mr. Cafritz. Mar-Cal borrowed $22.7 million, Mayfair borrowed $15.25 million, and Brinkley borrowed $41.5 million. The terms of the loans were substantially simi-

---

[2]These interests were held by a grantor trust and were thus treated as being owned by Maurice directly. See sec. 671.

lar. Each loan had a 5.88% interest rate and a note secured by the partnership's assets, but neither Maurice nor Mr. Cafritz was personally liable on the notes.

Out of these debt proceeds Mar-Cal, Mayfair, and Brinkley in June 2009 made debt-financed distributions to Maurice of $10,854,950, $4,790,857, and $6,413,684, respectively. These funds were initially deposited in Maurice's personal account at BB&T Bank. The cash was thereafter invested in money market funds and other investment assets, and those assets were held in Maurice's personal accounts until his death.

During 2009-2011 Mar-Cal, Mayfair, and Brinkley incurred interest expense on the M&T loans. Each partnership issued to Maurice for each year a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., reporting his distributive shares of its rental real estate income and interest expense. On his Federal income tax return for each year, Maurice reported his distributive shares of the interest expense on the M&T loans as "investment interest" on Schedule A.

On July 31, 2011, Maurice transferred to William, by inter vivos gift, 50% of his ownership interests in Mar-Cal, Mayfair, and Brinkley. William thereupon agreed to be bound by each partnership's operating agreement. But he did not become personally liable on any of the M&T loans.

By gratuitously transferring to William his partnership interests in Mar-Cal, Mayfair, and Brinkley, Maurice was relieved of his shares of the partnership liabilities represented by the M&T loans. On his 2011 Federal income tax return, he treated the nonrecourse partnership liabilities of which he was relieved as "amounts realized" on the transfers. See secs. 1.752-1(h), 1.1001-2(a)(4)(v), Income Tax Regs. He accordingly reported taxable capital gains of $10,026,045, $6,492,303, and $8,667,786, respectively.

B.    Claridge Partnership

Claridge House Alexandria Associates, L.P. (Claridge), a partnership for Federal tax purposes, owned and operated rental real estate, including an apartment complex in Alexandria, Virginia. Before his death Maurice held in Claridge a 2.5% general partnership (GP) interest and a 10% limited partnership (LP) interest. Maurice indirectly held an additional 5.498% LP interest in Claridge by virtue of his 25% interest in the Lipnick Family Limited Partnership (Family LP).

In February 2012 Claridge borrowed $20 million from Walker & Dunlop, LLC (W&D) at an interest rate of 4.19% and distributed the proceeds to its partners. The partnership's note was secured by the partnership assets, but neither Maurice nor any of the other partners was personally liable on the note. From these debt proceeds Claridge distributed $1,683,864 directly to Maurice and

$706,780 indirectly to Maurice through the Family LP. These funds were initially deposited in Maurice's personal bank account, and the cash was thereafter invested in money market funds and other investment assets that were held in Maurice's personal accounts until his death.

Claridge during 2012 and 2013 incurred interest expense on the W&D loan. Claridge issued to Maurice for each year Schedule K-1 reporting his distributive shares of Claridge's rental real estate income and interest expense. On his Federal income tax return for each year, Maurice reported his distributive share of the interest expense on the W&D loan as "investment interest" on Schedule A.

Maurice died on October 15, 2013. His will bequeathed to William his 2.5% GP interest in Claridge, a 3.75% LP interest in Claridge, and half of his interest in the Family LP. The latter gave William (indirectly) an additional 2.749% LP interest in Claridge. After this bequest William did not become personally liable on the W&D loan.

C.  Tax Reporting and IRS Examination

The M&T and W&D loans remained outstanding during 2013 and 2014, and the four partnerships paid interest on these loans. For 2013 Mar-Cal, Mayfair, and Brinkley issued to William Schedules K-1 reporting that his distributive

shares of the partnerships' rental real estate income and interest expense attributable to the M&T loans were:

| Partnership | Income | Interest Expense |
|---|---|---|
| Mar-Cal | $515,018 | $344,688 |
| Mayfair | 294,360 | 177,052 |
| Brinkley | 264,249 | 193,763 |

For 2014 Mar-Cal, Mayfair, Brinkley, and Claridge issued Schedules K-1 reporting that William's distributive shares of the partnerships' rental real estate income and interest expense attributable to the M&T and W&D loans were:[3]

| Partnership | Income | Interest Expense |
|---|---|---|
| Mar-Cal | $511,433 | $340,259 |
| Mayfair | 269,293 | 174,677 |
| Brinkley | 245,474 | 191,215 |
| Claridge | 208,750 | 25,751 |

For 2013 and 2014 petitioners jointly filed Forms 1040, U.S. Individual Income Tax Return, attaching to each return a Schedule E. They took the position that the interest paid by the partnerships on the M&T and W&D loans was not

_____

[3]The amounts shown for Claridge include amounts appearing on the Schedule K-1 issued to William, plus William's share of amounts shown on the Schedule K-1 issued to the Family LP. The amounts passed through to William from the Family LP included $7,866 of interest paid on the W&D loan (which is included in the table) and $15,731 of miscellaneous investment interest (which petitioners separately reported as investment interest on Schedule A of their 2014 return). The latter amount is not at issue here.

"investment interest," as it had been in the hands of Maurice, because William had not received any of the loan proceeds and had not used any partnership distributions to acquire investment assets. Rather, they treated the interest as having been paid on indebtedness properly allocable to the partnerships' real estate assets, and hence treated William's distributive shares of the interest expense as fully deductible against his distributive shares of the partnerships' real estate income. Accordingly, on each Schedule E they netted against the income for each partnership (as shown in the tables above) the corresponding amount of interest expense (as shown in the tables above). They reported the resulting net income on Forms 1040, line 17.

On October 30, 2017, the IRS issued petitioners a timely notice of deficiency for 2013 and 2014. It determined that William's distributive shares of the interest paid by the partnerships on the M&T and W&D loans should properly have been reported on Schedules A as "investment interest." Under section 163(d)(1), "investment interest" is deductible only to the extent of a taxpayer's "net investment income." Because petitioners had insufficient investment income for both years, the IRS disallowed deductions for all of the passed-through interest

attributable to the M&T and W&D loans. It also determined accuracy-related penalties under section 6662(a).[4]

Petitioners timely petitioned this Court for redetermination of the deficiencies and the penalties. On December 20, 2018, the parties submitted the case for decision without trial under Rule 122.

Discussion

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not contend that the burden of proof should shift to respondent under section 7491(a). In any event, because only legal issues remain, the burden of proof is irrelevant. See Nis Family Tr. v. Commissioner, 115 T.C. 523, 538 (2000).

---

[4]Neither party contends that any of the partnerships was subject to the audit procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). See secs. 6221-6234 (as in effect for years before 2018). Mar-Cal, Mayfair, and Brinkley filed their 2013 and 2014 returns as small partnerships exempt from TEFRA procedures. See sec. 6231(a)(1)(B). Each partnership checked a box indicating that it was not electing to have TEFRA procedures apply. See sec. 6231(a)(1)(B)(ii). In any event, if the Commissioner "reasonably determines" on the basis of a partnership's return that TEFRA procedures do not apply for a particular year, "then the provisions of this subchapter shall not apply to such partnership * * * for such taxable year or to partners of such partnership," even if the Commissioner's determination is erroneous. Sec. 6231(g)(2). Claridge's 2013 and 2014 partnership returns are not in the record, but neither party contends that TEFRA procedures were applicable to it.

A.     Governing Statutory and Regulatory Structure

Section 163(a) generally provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." For taxpayers other than corporations, "personal interest" as defined in section 163(h) is generally nondeductible. Nondeductible personal interest is defined to exclude (among other things) "interest paid or incurred on indebtedness properly allocable to a trade or business" and "any interest which is taken into account under section 469 in computing income or loss from a passive activity." Sec. 163(h)(2)(A), (C). Personal interest also excludes "any investment interest (within the meaning of subsection (d))." Sec. 163(h)(2)(B).

Respondent contends that the interest paid by the partnerships on the M&T and W&D loans and passed through to William constituted "investment interest." Section 163(d) allows a deduction for investment interest, but subject to a limitation. Specifically, it provides that, "[i]n the case of a taxpayer other than a corporation, the amount allowed as a deduction * * * for investment interest for any taxable year shall not exceed the net investment income of the taxpayer for the taxable year." Sec. 163(d)(1).

Petitioners had little net investment income for 2013 and 2014. They accordingly agree that, if the interest in question constituted "investment interest"

under section 163(d), it would be nondeductible. And respondent agrees that, if the interest was not "investment interest," it was properly reportable and deductible on Schedule E.

Investment interest is defined as interest that is "paid or accrued on indebtedness properly allocable to property held for investment." Sec. 163(d)(3)(A). The interest in question was incurred by Mar-Cal, Mayfair, Brinkley, and Claridge, which owned, operated, and actively managed apartment buildings and other rental real estate. The loans on which the interest was paid were secured by those real estate assets. Respondent does not contend that the operating assets held by the partnerships constituted "property held for investment."

Temporary regulations, promulgated in 1987 but never finalized, provide a tracing rule for determining when debt is "properly allocable to property held for investment." Sec. 163(d)(3)(A); see sec. 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). Generally, "[d]ebt is allocated to expenditures in accordance with the use of the debt proceeds and * * * interest expense accruing on a debt * * * is allocated to expenditures in the same manner as the debt is allocated." Sec. 1.163-8T(c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987). "Debt is allocated," in other words, "by tracing disburse-

ments of the debt proceeds to specific expenditures." Sec. 1.163-8T(a)(3), Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987).

For example, if a taxpayer uses debt proceeds to make a personal expenditure, such as taking a vacation, the interest is treated as nondeductible personal interest. See sec. 163(h); sec. 1.163-8T(a)(4)(ii), Example (1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987). If a taxpayer uses debt proceeds in connection with a passive activity, the interest is subject to the passive loss limitations. See sec. 469; sec. 1.163-8T(a)(4)(ii), Example (1), Temporary Income Tax Regs., supra. And if a taxpayer uses debt proceeds to make "an investment expenditure," the interest incurred on the debt is allocable to such investment expenditure, and the interest "is treated for purposes of section 163(d) as investment interest." Sec. 1.163-8T(a)(4)(i)(C), Temporary Income Tax Regs., 52 Fed Reg. 25000 (July 2, 1987).

The temporary regulations do not specify how these tracing rules apply to partnerships and their partners. But the IRS has published guidance on this point. See Notice 89-35, 1989-1 C.B. 675.[5] It provides that, if a partnership uses debt proceeds to fund a distribution to partners--i.e., to make debt-financed distribu-

---

[5]The IRS has indicated that taxpayers may rely on the guidance provided in Notice 89-35 for taxable years ending after December 31, 1987. See 1989-1 C.B. at 676. The taxable years at issue ended long after that date.

tions--each partner's use of the proceeds determines whether the interest passed through to him constitutes investment interest. Id. at 676-677. Thus, if a partner uses the proceeds of a debt-financed distribution to acquire property that he holds for investment, the corresponding interest expense incurred by the partnership and passed on to him will be treated as investment interest. Ibid. In short, if a taxpayer uses debt proceeds to acquire an investment, the interest on that debt is investment interest regardless of whether the debt originated in a partnership.

B.    Analysis

Reduced to its essentials, the question before the Court is whether William is bound to treat the interest expense passed through to him in the same manner as Maurice. William acquired interests in the four partnerships by gift or bequest from his father. Respondent argues that William in effect stepped into his father's shoes, with the supposed result that the interest, properly reported by Maurice as investment interest, remains investment interest so long as the loans remain on the partnerships' books. We find no support for this theory in the statute, the regulations, or the decided cases.

Maurice received debt-financed distributions from the four partnerships. He used the proceeds of those distributions to acquire shares of money market funds and other assets that he held for investment. Consistently with the temporary

regulation's tracing rule, as applied to partners by Notice 89-35, supra, Maurice treated the interest expense incurred by the partnerships and passed through to him as "investment interest" properly reportable on Schedule A.

William did not receive, directly or indirectly, any portion of the debt-financed distributions that the partnerships made to Maurice in 2009 and 2012. Nor did William use distributions from those partnerships to make "investment expenditure[s]." See sec. 1.163-8T(a)(4)(i)(C), Temporary Income Tax Regs., supra. In short, the facts that caused the passed-through interest to be "investment interest" in Maurice's hands simply do not apply to William.

The temporary regulations include a provision that explains how debt should be allocated where (as here) no proceeds are disbursed to the taxpayer:

> If a taxpayer incurs or assumes a debt in consideration for the sale or use of property * * * or takes property subject to a debt, and no debt proceeds are disbursed to the taxpayer, the debt is treated for purposes of this section as if the taxpayer used an amount of the debt proceeds equal to the balance of the debt outstanding at such time to make an expenditure for such property * * * [Sec. 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., 52 Fed. Reg. 25001 (July 2, 1987).]

William acquired his ownership interests in the four partnerships by gift or bequest from Maurice. He acquired those interests subject to the M&T and W&D debts that were then on the partnerships' books. Under the temporary regulation,

William is thus treated as using his allocable share of that debt "to make an expenditure for such property," viz., his partnership interests.

Notice 89-35 refers to this scenario as a debt-financed acquisition, as opposed to a debt-financed distribution, and it explains how the regulation applies to partnerships and their partners: "In the case of debt proceeds allocated under section 1.163-8T to the purchase of an interest in a passthrough entity (other than by way of a contribution to the capital of the entity), the debt proceeds and the associated interest expense shall be allocated among all the assets of the entity using any reasonable method."

In short, whereas Maurice received a debt-financed distribution, William is treated as having made a debt-financed acquisition of the partnership interests he acquired from Maurice. See ibid. For section 163(d) purposes, therefore, the debt proceeds are allocated among all of the partnerships' real estate assets using a reasonable method, and the interest paid on the debt is allocated to those assets in the same way. Sec. 1.163-8T(c)(1), Temporary Income Tax Regs., supra.

The partnerships' real estate assets were actively managed operating assets. Respondent agrees that those assets did not constitute "property held for investment." See sec. 163(d)(3)(A). The interest paid on the M&T and W&D loans therefore was not "investment interest."

In support of the opposite conclusion, respondent disputes the relevance of section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., supra, urging that William, when acquiring the partnership interests from his father, did not "assume[] a debt" or "take[] property subject to a debt." Respondent agrees that the M&T and W&D loans were bona fide liabilities of the partnerships. But he emphasizes that William had no personal liability on those loans, which were nonrecourse, and that the liens held by the lenders ran against the partnerships' real estate assets, not against William's partnership interests.

We find no support for respondent's position. In Smith v. Commissioner, 84 T.C. 889 (1985), aff'd, 805 F.2d 1073 (D.C. Cir. 1986), we considered whether a corporation should be considered to have assumed a liability for purposes of section 357(c) where a shareholder contributed to it an interest in a partnership whose assets were encumbered by non-recourse debt. Judge Tannenwald answered that question in the affirmative: "Where, as here, the partnership interests transferred are themselves encumbered in substance by a right of foreclosure on the partnership's real property, the corporation acquires such interests subject to the encumbrance." Smith, 84 T.C. at 910 (emphasis added) (citing Commissioner v. Tufts, 461 U.S. 300 (1983)). The Commissioner himself had previously reasoned similarly, ruling that, where limited partnership interests are

transferred to a corporation, "[e]ach transferring limited partner's share of partnership nonrecourse liabilities shall be considered as a liability to which the partnership interest is subject." Rev. Rul. 80-323, 1980-2 C.B. 124, 125.

These authorities show that William acquired his interests in Mar-Cal, Mayfair, Brinkley, and Claridge "subject to" the M&T and W&D debts, even though he did not personally assume those debts, which remained nonrecourse with respect to the partners individually. In the converse situation, where a partner sells a partnership interest, the regulations provide that the partner's "amount realized" includes his share of the partnership liabilities of which he is relieved, even if the liabilities are nonrecourse. See secs. 1.752-1, 1.1001-2(a)(4)(v), Income Tax Regs.; see also sec. 1.1001-2(c), Example (4), Income Tax Regs. (stating that a taxpayer's "amount realized" on transfer of a partnership interest includes the nonrecourse liabilities of which he is relieved, where the transferee "takes the partnership interest subject to the * * * liabilities"). For purposes of subchapter K generally, any increase or decrease in a partner's share of partnership liabilities is treated as a deemed contribution or distribution, regardless of whether the debt is recourse or nonrecourse. See sec. 752; sec. 1.752-1, Income Tax Regs. In short, the fact that a partner is not personally liable for a partnership's debt does not mean

that his partnership interest is not "subject to a debt" for purposes of subchapter K.[6]

For these reasons, we conclude that section 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., supra, in conjunction with Notice 89-35, supra, dictates that the interest expense passed through to William from the partnerships was not "investment interest" under section 163(d). But even if that temporary regulation were somehow thought inapplicable here, respondent has not articulated any principle or rule that would affirmatively require the interest in question to be characterized as "investment interest." The principle that required such interest to be characterized as "investment interest" in Maurice's hands clearly does not apply because William (unlike Maurice) did not receive any debt-financed distributions from the partnerships.

Respondent does not contend that William received debt-financed distributions indirectly or that the substance of the parties' transactions differed from their form. Respondent's position thus reduces to the contention that, because

_____

[6]When Maurice gratuitously transferred interests in Mar-Cal, Mayfair, and Brinkley to William in 2011, he was required to include the partnership debt from which he was relieved as an "amount realized," and he reported capital gains tax accordingly. See supra p. 6. To the extent Maurice was relieved of the debt, liability therefore necessarily shifted to the other partners, including William. William thus took his partnership interests "subject to the debt," even though the liabilities were nonrecourse.

William acquired the partnership interests from his father, he stands in his father's shoes and must treat the passed-through interest the same way his father did. But neither section 163(d) nor its implementing regulations include any family attribution rule or similar principle that would require this result.

It seems obvious that William would have no "investment interest" if he had acquired his ownership interests in the four partnerships from a third party for cash. Respondent has not explained why the result should be different because William acquired those interests from his father by gift and bequest. Respondent, in short, has enunciated no principle that would justify characterizing the interest passed through to William as "properly allocable to property held for investment" by William. Sec. 163(d)(3)(A).

Respondent urges us to adopt a "once investment interest, always investment interest" rule on the theory that any other approach would "place a myriad of additional administrative burdens on both taxpayers and the government." But the temporary regulations and IRS guidance clearly dictate different outcomes depending on whether the partner receives a debt-financed distribution or makes a debt-financed acquisition. See sec. 1.163-8T(c)(3)(ii), Temporary Income Tax Regs., supra; Notice 89-35, supra. Recognition that partnership interests may change hands is thus an inherent part of the regulatory structure. And the alloca-

tion is no more cumbersome than allocating debt for any other purpose under subchapter K.

In sum, we hold that the interest expense passed through to William from the M&T and W&D loans was not "investment interest" under section 163(d). When William acquired the partnership interests from his father, he was in the same position as any other person who acquired partnership interests encumbered by debt. He did not receive the proceeds of those debts, and he did not use (and could not have used) the proceeds of those debts to acquire property that he subsequently held for investment. There is thus no justification for treating the interest expense passed through to him as investment interest under section 163(d). Rather, petitioners correctly reported it on Schedule E as allocable to the real estate assets held by the partnerships. Concluding that there are no deficiencies in petitioners' income tax for 2013 and 2014, we find that they are likewise liable for no penalties.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>petitioners</u>.